Baldwin, J.
It seems to me that the appellees have succeeded in obtaining a verdict and judgment for the land in controversy, without any sufficient evidence of title, or in lieu of it of a sufficient adversary possession by them and those under whom they claim.
It is not disputed between the parties that in the year 1792, a patent for 500 acres of land, embracing the 24 acres in controversy, was granted by the Commonwealth to Mead, under whom the appellant claims; and that Ryan, who asserted a right to the land so patented, in hostility to Mead, in the year 1797 conveyed 200 acres thereof, including the 24 acres to Dudley, under whom the appellees claim ; and that in September 1801, Mead conveyed 200 acres of the same patented land to Dudley. The boundaries of the deed from Ryan, as represented in the plat and report of the survey made in the cause, are the same with those of the deed from Mead, except those lines of the former which take in the 24 acres. It is also undisputed that at the time of the conveyance from Ryan to Dudley, it was agreed be *146 tween them, and so endorsed on the deed, that if the land thereby conveyed should be recovered by Mead, Ryan should repay to Dudley 20 pounds, the consideration money, with interest thereon; that the controversy between Ryan and Mead, was afterwards determined in favour of the latter, in consequence of which the former did repay to Dudley the 20 pounds, with interest ; and so the deed from Ryan to Dudley became ineffectual; and if Dudley acquired any title to the 24 acres, it must have been from Mead.
Though the deed from Ryan to Dudley was given in evidence on the trial by the appellees, they proved by their own witnesses the success of Mead in his controversy with Ryan, and the repayment of the 20 pounds, with interest, by the latter to Dudley.
The deed from Mead to Dudley was also given in evidence by the appellees on the trial, but they made no effort, it would seem, to prove that its boundaries embraced the 24 acres in controversy. As represented in the plat and report of the survey made in the cause, conforming substantially to the calls of that deed, the boundaries thereof exclude the 24 acres, and no pretensions of the appellees to the contrary were reported by the surveyor.
The appellees, it is true, claimed, and examined witnesses to prove, division lines between Mead and Dudley, which, if established as such, would throw the 24 acres into Dudley's part of the patented land ; but their claim was not by force of the calls in the deed from Mead to Dudley, but by force of a parol agreement between those parties. Those witnesses deposed that Mead and Dudley, in the year 1800 or 1801, run and marked a line, which they then agreed should be the division line between them, and that Mead then promised to make a deed to Dudley for the land “run off” by that division line. The division line, or rather lines, the witnesses designate by reference to the plat of *147 survey made in the cause, and they are the identical lines of Ryan's deed to Dudley, that include the 24 acres in controversy. The same witnesses further deposed that Dudley's purchase from Ryan was shortly after the running and marking of the division line between Mead and Dudley, and that his motive for it was the apprehension that he would lose the land he had purchased of Mead, if Ryan's title should prove the best; and that he took a deed from Ryan, calling for the same marked division line. But upon both these last points, the witnesses are manifestly incorrect; for Ryan's deed being dated in 1797, it shews that Dudley's purchase from him must have been prior to his purchase from Mead, and to the running of the division line between him and Mead, in 1800 or 1801, and that Rya?i's deed could not call for such a division line; and in fact it calls for none, except as beginning in the line of a quite different tract owned by Dudley, and which was formerly Grear's.
The evidence of the appellees’ witnesses is also contradicted and impeached by the witnesses examined for the appellant, whose testimony tends to prove that the division lines spoken of by the former as having been run and marked by Mead and Dudley, in 1800 or 1801, are in truth lines of Ryan's deed to Dudley, anciently marked, before the date of that deed; and that the only division line run and marked by Mead and Dudley was a blazed line corresponding in date with Dudley's purchase from Mead in 1800, and excluding therefrom the land in controversy. It would be improper, however, to go into a discussion of the conflicting parol evidence introduced by the parties, inasmuch as under the well established rules of this Court, in relation to bills of exception to decisions granting or refusing new trials, it could avail the appellant nothing.
The general rule of this Court on the subject, as settled by the case of Bennett v. Hardaway, 6 Munf. 125, *148 and other subsequent cases, is, that a bill of exceptions to a decision granting or refusing a new trial, is not well taken, when it states the evidence of the witnesses examined oil the trial, instead of the facts appearing to the Court to have been proved by such evidence. This rule, however, is not free from exception. If by rejecting all the parol evidence for the exceptor, and giving full force and credit to that of the adverse party, the decision of the Court below still appears to be wrong, the Appellate Court will take cognizance of the case, and reverse the judgment. Green v. Ashby, 6 Leigh 135 ; Ewing v. Ewing, 2 Leigh 337; Rohr v. Davis, 9 Leigh 30.
In this case, therefore, the question whether a new trial ought to have been granted, turns upon the title papers introduced by the parties, the plat and report of the survey made in the cause, and the parol testimony on the part of the appellees.
It will be seen, from what has been said, that there is an irreconcilable repugnancy in the appellees’ own evidence, and on very material points. Their witnesses were introduced to prove, that about the date of the deed from Mead to Dudley, lines were actually run between those párties, which threw the 24 acres in controversy into the part of the patented land sold by the former to the latter. Now, this parcel of 24 acres is a triangle, lying, as represented in the plat and report of the survey made in the cause, between certain boundaries of the deed from Ryan and certain boundaries of the deed from Mead, the former embracing so much more of the patented land than the latter. It was therefore important for the appellees to prove that the boundaries of the deed from Mead were identical with those of the deed from Ryan, which embraced the 24 acres; and as this could not be done from the respective calls of the two deeds, it was attempted by parol evidence ; and the witnesses deposed to the running and *149 marking of lines between Mead and Dudley in 1800 or 1801, which are unquestionably lines of the deed from Ryan, and it not being pretended that those lines were marked twice, the witnesses fell into the error of deposing that Dudley's deed from Ryan was subsequent to his purchase from Mead, and called for the same division line.
I am aware of no principle or authority to prevent the Appellate Court from rejecting so much of the parol evidence for the appellees as is disproved by their own title papers; and cannot doubt, for obvious reasons, the propriety of our doing so. At the same time, I presume, the jury being the proper judges of the credit and weight due to the testimony of the witnesses, that so far as it is not so disproved, it must be taken as true. How, then, does the case stand upon the appellees’ own evidence ?
There has been no attempt on the part of the appellees to prove that the land in controversy is embraced by any calls of the deed from Mead to Dudley, under which they claim. All the lines of that deed, without exception, are therein described by courses, distances and corner trees, and some of them also call for adjacent lines. Without reference to the courses, distances and monuments so called for, the appellees undertake to prove, by the testimony of witnesses, the running and marking of a line or lines of division about the date of the deed; but without any evidence, by blocking the marked trees, or otherwise, that the marks correspond with the date of the deed, though the lines so contended for are the identical boundaries called for by a different conveyance. I shall not question the veracity of the witnesses, nor attempt to weigh their testimony: but I think it clear, that the evidence is not sufficient in law to shew title in the person under whom the appellees claim.
*150 It is obvious that a person claiming property by deed must shew that it falls within the designation or description of the subject which the instrument purports to convey: and that if he cannot do so, he must fail in tjje effor(; t0 establish his title. But it is not indispensable that the description should be accurate in all its parts •, for if, after rejecting what is false, enough remains that is true, to ascertain and identify the subject of the conveyance, the case will fall within the rule falsa demonsiratio non nocet. Thus a general designation of an estate, or tract of land, or tenement, by occupation, name or locality, if erroneous, may be corrected by a further description by courses, distances and monuments: so if the particular description be inapplicable, and the general designation correct, the same result may follow. In cases, however, where the description of the thing intended to be conveyed includes several indicia, all of which are necessary to ascertain it, no estate will pass except such as will agree to every part of the description. Thus the conveyance of a portion only of a tract of land, by metes and bounds, may be contrasted with a conveyance of the whole tract, with the like particulars superadded. In the former case, though the general designation be correct, the particular description must be so also. And such is the case before us: the portion of the land patented to Mead, which is conveyed by his deed to Dudley, must be ascertained from the metes and bounds set forth in the instrument.
Upon questions of boundary, where the particulars of description in the deed are conflicting, it becomes necessary to select those most worthy of confidence ; and it is well settled that courses and distances must yield to the natural and marked monuments called for in the instrument. Some of the American cases have held, in conformity with what a rigid adherence to principle would seem to require, that the monuments which are *151 to control course and distance must be called for in the instrument: but others assert that where a deed describes the land by courses and distances only, and old marks are found on the ground corresponding in age, as nearly as can be ascertained, with the date of the deed, and so nearly agreeing with courses and distances, that they may well be supposed to have been made for its boundaries, the marks shall be taken as the termini of the land. See the cases cited in 4 Phil. Ev. 2 American edit. p. 1379. The Virginia cases seem to have gone still further, and to have given much weight to marked lines of such a description, found on the ground, though corner trees, not to be found or ascertained by evidence, are called for in'the instrument, or though inconsistent with points in a plat referred to, especially if comporting with natural objects mentioned. See Shaw v. Clements, 1 Call 429 ; Herbert v. Wise, 3 Call 239; Baker v. Seekright, 1 Hen. & Munf. 177; Dogan v. Seekright, 4 Hen. & Munf. 125.
It will thus be seen that the common law rule, requiring the monuments relied on to be mentioned in the deed, has with us been a good deal relaxed; and the relaxation may probably be attributed to the provision of our land law, directing surveyors, in making surveys of lands to be patented by the Commonwealth, to bound the same by marked trees, where a water course or ancient marked line shall not be the boundary. It thus being made part of the surveyor’s duty to mark the lines, if such marked lines are found on the ground, his omission to notice them in his report, or noticing their termini inaccurately, may be placed on the same footing with other omissions or inaccuracies of description in regard to courses, distances, &c. introduced into the patent from the certificate of survey. And this relaxation in regard to patents would naturally extend to deeds consequent upon, or growing out of them, as is the case with all our conveyances.
*152 But there are no cases decided by this Court to countenance the idea, that a claimant of the legal title to land under a deed of conveyance, can disregard the calls of his deed, and rely merely upon parol evidence, that at or ab°nt fhe his purchase, a division line was run by and between him and his vendor, without any evidence to prove that the marks are found upon the ground and correspond reasonably with the date of the deed, survey or division, or that they were once so found, and have been lost by decay or destruction. I do not mean that such evidence is inadmissible, or merely secondary, (for considerable latitude must be allowed to the evidence adduced in such controversies,) but that it is insufficient in point of law to establish the title claimed ; for the law dispenses with corresponding calls in the deed only under the circumstances I have mentioned ; and if a recovery were warranted by such defective evidence, the result would be to impair the security of land titles, and the efficacy of the statute against frauds and perjuries.
Nor must we lose sight of the distinction between mistakes in the description of the property conveyed by the instrument, and a mistake in the omission to convey all that the parties may have contemplated by a previous executory contract; for though the former may be sometimes corrected, or rather disregarded, the latter is always fatal in a legal forum. And here the evidence of the appellees’ witnesses proves, at most, an intention at one time to convey the land in controversy by deed, but the calls of the deed shew that it was omitted, whether by design or mistake is immaterial.
As to the other ground of the appellees’ claim, that of an adversary possession on the part of Dudley, without title, the evidence of their witnesses tends only to the proof of a brief and fleeting possession of the land in controversy, far short of the prescriptive period derived from the statute of limitations; and the posses *153 sion of Dudley, and of those claiming under him, of other parts of the land, could not devest the legal possession of the part in controversy, derived by Mead, and those claiming under him, from the Commonwealth’s patent. Taylor v. Burnsides, 1 Gratt. 165; Overton v. Davidson, Id. 211.
In regard to the question presented by the first bill of exceptions, to wit, the admissibility as evidence for the appellant, of the paper found amongst Mead’s papers, purporting to be a survey made for him of a tract of land, embracing the land in controversy, I deem it unnecessary to express an opinion. The paper was offered merely to prove.that Mead claimed the land in controversy, in order to rebut evidence which the bill states the appellees had previously introduced, tending to prove that Mead had acquiesced in the possession of Dudley, and abandoned any claim to the land in controversy. What the evidence was, which the appellees had so introduced, is not stated. The other bill of exceptions— to the decision of the Court overruling the appellant’s motion for a new trial — sets forth all the evidence in the cause ; and I think, therefore, we are at liberty to look into it, for the purpose of ascertaining whether the appellant was prejudiced by the rejection of the paper; and it is clear that he could not have been thereby prejudiced, for. the appellees’ evidence of Dudley’s possession was utterly worthless; and in truth, there was no evidence of acquiescence or abandonment on the part of Mead, if that could have availed the appellees any thing. The suggestion, therefore, in the bill of exceptions, of the only ground upon which the paper was offered by the appellant, seems to have been a mere surmise, without any real foundation.
I think the Circuit Court erred in refusing to grant the appellant a new trial, and that the judgment ought, therefore, to be reversed.
*154 Allen, J. The bill of exceptions to the decision of the Court overruling the motion of the defendant below for a new trial, sets forth all the evidence, instead of the facts proved. Unless therefore it appears, that after rejecting all the evidence of the exceptor, and giving to that of the other party full credit, the decision was still wrong, the Appellate Court cannot revise the judgment of the Court below on this motion. It appeared that both parties claimed portions of a tract of land patented to Mead. The deed from Mead to Gwin Dudley, under whom the lessor of the plaintiff claimed, was prior in date to that under which the defendants held; and the only question, as it seems to me, which arises on the record is, did this deed embrace the land in controversy ? If the deed is special in its calls, and they are all satisfied, I do not perceive how it is possible to enlarge the operation of the deed by parol evidence, so as to embrace land not included in it. Where a deed contains several particulars of description, and some are mistaken, they may be disregarded or corrected by other calls more entitled to respect ? The patent and the deed to Gwin Dudley, furnish an illustration of this rule. The deed to Dudley, in describing the boundaries, commences at a black oak in Great's patent line, designated in the plat and report of the surveyor returned in this case as letter G, and calls to run along Grear's patent line N. 69 W. 86 poles to a white oak, adopting the call of the patent. By the report of the surveyor it appears that this line is 117, instead of 86 poles in length; but the corner called for is found at the termination of this distance; the marked line extends to it, and the other calls of the patent and deed shew that this corner was the point intended to be reached, and that there was a mistake in the call for distance. The deed from Mead to Dudley, commencing at the point G, in the report of the surveyor returned in this case, calls for the old patent lines and corners until it reaches *155 the white oak at the point A; there leaving the exterior boundary of the patent, it calls to run S. 46 E. 216 poles, to a corner. According to the plat and report, the line as actually run is S. 45 E. 223 poles, to a black oak. The next line called for in the deed is S. 34 E. 160 poles, to a red oak in the patent line. It is found upon actual survey, according to the report, to be S. 27 E. 166. From this point the deed calls to run N. 51 W. along the old patent line to the beginning ; and according to the report of the surveyor, running along the old patent line N. 54 W. 98, closes the survey. It is seldom that the boundaries of an ancient patent or deed are found to correspond so nearly as in this case with the actual courses and distances and the objects called for, and actually found on the ground. The deed calls for 200 acres more or less; the quantity, as ascertained by the survey, is found to be 268 acres. The lessors of the plaintiff insisted on their right to recover the additional quantity of 24 acres embraced in the boundaries of a previous deed from Ryan to Gwin Dudley, but excluded by the boundaries of the deed from Mead to the same party. To accomplish this object it would be necessary to extend the line from the marked corner at I, on the plat, to the pine at K, to supply a new line from K to the corner at L, to extend the line from L to G, the beginning, and to disregard the blazed line from I to H, appearing by the report to be an old line; and from the evidence of the surveyor, if that could be looked to, corresponding in age with the date of the deed from Mead to Dudley. There is nothing on the face of the deed from which it could be inferred that any mistake or omission was made in the description of the land, or the boundaries called for. And the effort is to supply by parol new terms of description, and additional boundaries not called for, or for any thing appearing on the deed intended to be called for, but on the contrary, expressly excluded by the special and pre *156 cise calls of the deed. It seems to' me this cannot be permitted, without impairing the security of titles.' The proof relied on to effect this object in the present case, is, that before the conveyance by Mead to Dudley, they run an^ marked ^ division line from A, passing I, to the pine at K, and,from thence to L, and agreed that it should be the division line between them; and that. Mead promised to make a deed to Dudley for the land run off by the said division line. Conceding that these were facts proved at the trial, and that as the case comes up, we are not at liberty to enquire into their truth, they do not prove that the legal title was ever vested in Dudley. They merely establish that before the conveyance, lines were run, marked and agreed on, and that Mead promised to convey the land within said lines. But he did not do so. Why he did not, it is not necessary to enquire. The reason, no doubt, was that assigned by Gwin Dudley himself, that it was ascertained the lines included too large a quantity of land. Be this as it may, when Mead made his deed, he did not convey by the lines so run and marked, but by other lines and boundaries specially called for, and by actual survey found to correspond to a reasonable degree of certainty with the calls of the deed. I think, therefore, even if such facts established by parol proof were proper to add to the terms of a deed, they were wholly insufficient to shew that when the deed was made the grantor intended to convey the laud run off by said division line.
As to the private survey found amongst Mead's papers, I cannot perceive any ground for admitting it in evidence, or that it could have had any relevancy to the case if admitted.
But upon the first question, it seems to me the Court erred in overruling the motion for a new trial, and that the judgment for that cause should be set aside.
Daniel, 3. concurred in Baldwin's opinion. '
*157 Cabell, P. concurred in reversing the judgment.
The judgment of the Court was as follows:
It seems to the Court, that the question whether a new trial ought to have been granted by the Circuit Court, turns upon the title papers introduced by the parties, the plat and report of the survey made in the cause, and the parol testimony on the part of the defendants in error; and that the parol testimony on the part of the plaintiff in error ought to be excluded from consideration. But that notwithstanding such exclusion, the defendants in error have failed to shew that Gwin Dud-lei/, sr., under whom they claim, acquired title from William Mead, under whom the plaintiff in error claims, to the land in controversy; and that they have also failed to shew, that they and those under whom they claim, had at any time a sufficient adversary possession thereof to sustain their action: And therefore that the Circuit Court erred in refusing to grant to the plaintiff in error a new trial.
Judgment reversed with costs, a new trial directed, and the cause remanded.