Daniel, J.
The bank or mine of iron ore, to ref-strain an alleged trespass on which the injunction in this case was allowed, is, according to the surveys and other testimony in the cause, situated in the interlock caused by the interference of the bounds of Harvey’s patent for twenty-one hundred acres, granted on the 11th day of June 1787, with those of Ross’ patent for twelve hundred acres, granted on the 12th day of December 1785 ; and is therefore clearly embraced by the terms of the decree pronounced on the 10th of February 1807, by the County court of Botetourt in the case of Harvey v. Ross. That decree has never been reversed, and, so far as the proofs in the cause' show, its force and validity were never denied by Ross in his life time. Indeed no question as to the correctness of the decree or as to the right of the County court of Botetourt to make it, ever seems to have been made before the commencement of this suit. On the contrary, in the deed of the 12th August 1834, made by F. A. Ross, executor and devisee, and Myers and others also devisees, of David Ross, and also in the deed of William Ross and wife of the 16th July *395 1834, to the 'Catawba iron works company, (under whom the appellant claims,) conveying the several interests of the parties in the twelve hundred tract, express reference is had to* the decree: And each deed purports to convey only so much of the tract as was not (decreed to Robert Harvey by said «decree.
On the same day on which F. A. Ross, executor, &e. and ethers executed the deed above mentioned, to wit: the 12th August 1834, they also made another deed to the Catawba iron works company, conveying with special warranty, “‘all their lands on the Catawba creek, &e. being the lands which David Ross had title to at his death, and of which his heirs or executors' were seised at Ms death,” &c. In the description of the lands intended to be conveyed is embraced “ four hundred and eighty acres surveyed March 25th, 1785»”'
A patent founded on this survey, was issued to Ross-on the 13th of May 1786. The interlock before mentioned, as appears from the survey and other proofs in the -ease, is also covered by this patent. Ho mention, however, of this patent is made in the decree of 1807 r. nor in any of the proceedings in the suit in the- County court of Botetourt.
Still as the decree directed Ross to convey to- Harvey all the lands comprehended within the twenty-one-hundred acre patent, that were also comprehended in the twelve hundred acre patent, it is difficult to conceive how he could ever have made any opposition t©( the decree, or to any rights claimed under it, by showing that he held at the time the decree was rendered^, another patent covering the interlock, subsequent in1 date and consequently necessarily inferior as an evidence of title, to the one which the court had declared1 insufficient to protect him against Harvey’s superion' equity. The decree directed the interlock to be conveyed and whatever effect the decree had to deprive *396 Ross of, or render inoperative, the title he had disclosed an<^ re^ecl on, a fortiori, it had in respect to a younger and inferior title which he had not thought proper to disclose.
The two deeds of the 12th August 1834 made between the same parties and cotemporaneous in date, must be regarded as parts of one transaction, and as constituting in law one entire deed. Though therefore the deed in which the four hundred and eighty acre survey is conveyed makes no exception of the part thereof which was embraced within the bounds of the twenty-one hundred acre patent; yet as the deed conveying the twelve hundred acre tract does make the exception of it in excepting all which had been decreed to be conveyed to Harvey, the effect of the two deeds taken together, is to except out of the grants, in each, the land in question, as fully as if the exception had been expressed in terms, in each deed.
It is in proof that Harvey took possession of a portion'of his tract of twenty-one hundred acres as early as in the year 1806, and that he continued to occupy, cultivate and otherwise enjoy it as owner till his death in 1831: And this possession has been continued by his representatives ever since. It is also proved that in the years 1828 and 1829 he obtained ore from the land in question for the purpose of operating his furnace. Apart from this latter proof, the occupation of a portion of his tract by Harvey and those claiming under him, and the continued use and enjoyment thereof, accompanied by the notice which his suit in the County court of Botetourt gave of the extent of his claim, constituted, in the absence of any proof of an adversary possession by Ross and those claiming under him, of the portion of land in dispute, an adversary possession of all the land within the limits of his patent. And this possession, without calling in the aid of any presumption that Ross had executed a *397 deed for the land which the decree had directed him to convey, had ripened into a full and perfect title long before the year 1836, when the Catawba iron works company commenced converting into coal, wood upon a portion of the interlock. Taylor v. Burnsides, 1 Gratt. 165; Overton's heirs v. Davisson, Ibid. 211.
This temporary possession by the company for the purpose above mentioned, commenced in 1836 and abandoned in 1837 or 1838, could not operate to dis-seize Harvey’s representatives of the land in question. Pasley v. English, 5 Gratt. 141. When therefore the deed of trust of the 14th August 1840 was executed by the company, they had no possession actual or constructive of the ore bank in controversy. But the said bank was in the exclusive adversary possession of the appellees claiming and holding it by a perfect title. The deed of the company therefore could convey no shadow of right to the ore bank in dispute as against the appellees. The only effect it can have on their rights is, on the contrary, one of a beneficial character; in as much as it served to notify all claiming under it that the right to the land in controversy was never in the company, but resided with the Harveys: The description of the land intended to be conveyed, expressly referring to the deed of the Rosses, heretofore mentioned, in which the exception in favor of Harvey is made. The deed from Francis T. Anderson and A. P. Eskridge, commissioners, &c. of the 10th December 1847, has a like reference to the deed executed by F. A. Ross, &c. for the twelve hundred acres: And though the deed from Grattan and Triplett, &c. the purchasers at the commissioners’ sale, to the appellant and John T. and William H. Anderson, has no such reference; yet it has a reference to the deed executed by the commissioners and also to the decree under which they sold.
*398 I think it is clear that, at the time of the alleged trespass on the ore bank by the appellant, the appelmust be regarded as in possession of it with a clear anq inContestible title. They might have instituted their action of trespass against the appellant; but were they bound to do so before, or instead of applying to a court of equity to restrain the appellant from committing further trespasses on the property in dispute? Were they bound to litigate and discuss in a court of law rights which had not only been adjudicated as far back as 1807, but which had been solemnly recognized in the conveyances to which the appellant must necessarily refer as the sources of any title which he could assert ? I think not. The practice of courts of equity of interfering in such cases by way of injunction, is one comparatively of recent origin; but the jurisdiction is now fully recognized and well established by cases both in England and America. Mitchell v. Dors, 6 Ves. R. 147; Hanson v. Gardner, 7 Ves. R. 305; Thomas v. Oakley, 18 Ves. R. 184; 3 Daniel’s Ch. Pr. 1852—3; Stevens v. Beekman, 1 John. Ch. R. 318; Jerome v. Ross, 7 John. Ch. R. 315; Smith v. Pettingill, 15 Verm. R. 84.
The land upon which the trespass is alleged to be committed is proved to be of little or no value except for the iron ore found on it, which is proved to be of an excellent quality. The trespass is one which goes to the change of the very substance of the inheritance, to the destruction of all that gives value to it. The fact proved by the appellant that the value of the ore per load could be readily estimated, does not deprive a court of equity of its right to interfere in the case by way of injunction. The same might be shown in most cases of the kind. The products of most mines have a value already fixed or easy of ascertainment by proof; yet it was in prevention of like trespasses to this very species of property, mines of ore, coal, &c. that the *399 jurisdiction in question had its origin, and still continues to be most frequently exercised.
I see no error in the decree of the Circuit court, and think it should be affirmed.
Allen, Moncure and Lee, J-s. concurred in the opinion of Daniel, J.
Samuels, J. dissented.
Decree affirmed.