Burks, J.
This is the second time this ease has been before this court.
At the first trial of the issues on the pleas of vonassumpsit and the act of limitations, the only pleas as shown by the record ever filed in the cause, there was a verdict and iudsrment thereon for the defendant. That 0 ° judgment, on writ of error, was reversed by this court on the single ground that the circuit court erred in refusing to give a proper instruction to the jury bearing on the act of limitations. No other question was made by' the record or decided by this court. 27 Gratt. 448. While the cause was pending here the defendant died. After if was remanded for a new trial, it was revived against the personal representative of the defendant, and at the second trial there was again a verdict for the defendant and judgment accordingly, the issues being the same as on the first trial, and the case is here on a writ of error to that judgment, awarded at the instance of the plaintiff.
The assignments of error are based on four bills of exception taken by the plaintiff to rulings of the court at the last trial, and I propose to consider them in the order in which the bills are numbered.
After the jury had rendered their verdict, the plaintiff .by counsel moved to set it aside, on the ground that it was contrary to the evidence. The motion was overruled, and to this action of the court the first bill of exceptions was taken.
The assignment of error, founded on this bill, may readily be disposed of. The facts proved on the trial are not certified. The evidence only, as given to the jury,, is set out on the motion of the plaintiff’s attorney. It does not appear that there was any request to certify the facts.
If the rule, as laid down in the leading case of Bennett v. Hardaway, 6 Munf. 125, was strictly applied, this action *475 of the court could not be reviewed at all. The principle upon which that decision rests is, that the revising court should have the same lights and act upon the same as the inferior court, and that it will not undertake to determine what credit should be given to the oral testimony of witnesses, whose credibility it has not the same means of testing as were possessed by the court and jury who saw and heard the -witnesses testify and observed their whole demeanor. This decision has never been overruled ; but while the principle on which it was grounded has been adhered to, the rule established by it has, by a long line of cases subsequently decided, been modified in its application. The following are some of the more important cases: Carrington v. Bennett, 1 Leigh, 340; Ewing v. Ewing, 2 Leigh, 337; Green v. Ashby, 6 Leigh, 135; Rohr v. Davis, 9 Leigh, 30; Pasly v. English, 5 Gratt. 141; Vaiden's case, 12 Gratt. 717; Carrington v. Goddin, 13 Gratt. 587; Bull's case, 14 Gratt. 613; Gimmi v. Cullen, 20 Gratt. 439; Read's case, 22 Gratt. 924; and cases in more recent volumes of .Grattan’s Reports.
The rule, as modified, is stated in different forms by théjudges. See-whatds said by Judge Joynes in Gimmi v. Cullen, supra. In Read's case, upon a review of the previous decisions, Judge Moncure, after stating that regularly the facts should be certified, proceeds to say that where the facts are not certified “ the appellate court cannot revise the judgment unless the evidence be certified, and then only on certain conditions; that is, the court will not in that case reverse the judgment unless, after rejecting all the parol evidence for the exceptor, and giving full faith and credit to that of the adverse party, the decision of the court still appears to be wrong.” The rule thus stated I understand to be now the established rule. It is stated in the same terms in some more recent cases. See Scott & Boyd, v. Shelor, 28 Gratt. 891, 900.
*476 Applying this rule, the judgment of the circuit court l’efusing to set aside the verdict of the jury, because, as alleged, it was contrai’y to the evidence, if not plainly right, does not, at least, appear to be wrong. Rejecting all the parol evidence of the plaintiff and taking, as the • rule requires, all the evidence of the defendant to be true, the defence set up, to-wit: that the defendant had 'been i'obbed of the money, for the 3’ecovery of which the action was brought, was made out. It is only necessary to refer to the testimony, without repeating it, of the defendant’s testator, proved as given on the former trial, and to the testimony of othei's, who pi’ofess to have been eye-witnesses of the robbery. If these witnesses told the truth, (and on this branch of the case it must be assumed that they did,) the alleged robbery was established by the proof.
The second bill of exceptions is to the refusal of the court to set aside the verdict for an alleged misdirection of the jury by the court.
It does not appear by this bill that when the instruction wasgiven to the jury the plaintiff’s counsel objected to it. ()n the contraiw, the inference is, that if he had any objections, he waived them ; for, after the instruction had been given, the court, at the request of the plaintiff’s counsel, followed it with an explanation asked for by that counsel, and so far as appears, the instruction, accompanied by the desired explanation, went to the jury, if not with the approbation of the counsel, at least without objection. Certainly there was no exception then taken or l'eserved. The plaintiff’s counsel took all the chances with the jury, and after an adverse verdict, sought to have it set aside on account of an alleged misdirection, the explanatory part of which was given at his own instance, and the whole, as explained, not objected to. Can he be heard, under these circumstances, to complain of error in the instruction ?
*477 In jury trials, I have always understood the rule to be, that if a party objects to a ruling of the presiding judge during the progress of the trial, either in ting or excluding evidence, or giving or refusing instruetions, or otherwise, and intends to except to such ruling, he must make known such intention at the time of the ruling, or at least before verdict, and if the bill of exceptions cannot be drawn up at once, liberty should be reserved to do so during the term, and if he neglect to prefer exceptions until after the verdict, he will not then be allowed to do so.
One of the reasons for the rule requiring this promptness in taking the exception and giving notice thereof, is that an exception taken and made known for the first time at a subsequent period in the trial might affect very injuriously the rights of the opposing party; for, if he have reasonable notice of the exception, he may, perhaps, have it in his power at the time or during the trial to obviate or counteract it, and it would be unjust to allow his adversary to insist on the exception, and have the benefit of it, after, by his own negligence, or it may be by his contrivance, he has made it impossible to meet it.
Such I understand to be the principles deducible from the cases of Wash. & New Orleans Tel. Co. v. Hobson, 15 Gratt. 122, 138; Martz' ex’or v. Martz' heirs, 25 Gratt. 361; Perry’s ad’mr v. Peery, 26 Gratt. 320, 324; Winston v. Giles, 27 Gratt. 530; and Page v. Clopton, 30 Gratt. 415. The rule was not strictly applied in the last-named case, because it was not a proceeding inter partes, and for other reasons stated in the opinion delivered in the case.
The rule is stated quite broadly by Judge Moncure in Winston v. Giles. “Formally and regularly,” says he, “ a bill of exceptions purports to be tendered and signed when or immediately after the opinion excepted to is given ; and certainly, if convenient, the facts could then be set out-more-accurately and with less difficulty than *478 at any other time. It is admitted in all cases, everywhere, that at least the exception must be taken at the time, so as to give notice of it to the adverse party; and some of the cases require that the substance of the exception should be stated in writing at the time.”
I am aware that the president of this court, in the opinion in Bull’s case, 14 Gratt. 613, 625, 626, speaking of the rule referred to, said: “That if no objection be made at the time the instruction is given, nor an exception be then taken, or the point saved, but objection be made for the first time after verdict, and in the form of a motion to set it aside, the court will consider whether, under all the circumstances, the party has been prejudiced by the instruction ; and if of opinion that a just verdict has been rendered, according to the law and the evidence, will not set it aside on account of that objection.” And the decision in Stevenson v. Wallace, 27 Gratt. 77, 93, 94, accords with what has just been cited from Bull’s case. See also what is said in Johnson v. Macon, 1 Wash. 4, 5; Guerrant v. Tinder, Va. R. (Gilmer) 36, 41.
Whether the general rule which seems to be established by the decisions first before referred to is to be regarded as modified by the cases last named, in its application to instructions to which objection is made,for the first time by way of motion to set aside the verdict of the jury, it is not necessary, in my. judgment, to determine in the present case; for if the instruction given was liable to exception at all, I think that the plaintiff was precluded by the circumstances already adverted to from making objection after verdict.
Rut if the bill be regarded as well taken and as properly presenting to this court for decision the question whether the instruction complained of was erroneous or not, I have no difficulty in reaching a satisfactory conclusion.
*479 The plaintiff’s counsel, in his argument before the jury, relied on the fact that the defendant had offered no proof of the character of his testator, Pleasant Waddill, the former defendant, and after the argument of the ■counsel on both sides had been concluded, the court, of its own motion, instructed the jury before they retired that the character of the said Pleasant Waddill, as a party to the suit, was not involved in the issue to be tried; that the defendant had no right to introduce proof of the general character of said Pleasant Waddill as a party to the suit (originally); and that the jury should disregard all argument made before them by the plaintiff’s counsel, based on the failure of the defendant to introduce testimony as to the general character of said Waddill as such party ; and at the instance of the plaintiff’s counsel, the court added the following : “ That as the said P. Waddill had testified as a witness at a former trial, and as this testimony at said former trial was proved before the jury at the present trial by a witness who had heard it given, the plaintiff had a right at the present trial to introduce evidence before the jury to impeach the said Waddill as a witness by proving his •general character.”
The argument of the counsel, which the jury were directed to disregard, was evidently based on the assumption that the character of the defendant’s testator for honesty and integrity was in issue, as an original party to the cause, and he deduced an inference unfavorable to the defence from the failure of the defendant to offer ■evidence in support of that character.
This was an erroneous assumption. In civil cases, the rule is, that evidence of general character is never admissible unless the nature of the action involves the general character of the party, or goes directly to affect it, such as an action by the husband or father for seduction, and generally actions of tori wherever the defendant is *480 charged with fraud from mere circumstances. This kind of evidence is rejected ^riierever the general character is involved by the plea- only, and not by the nature of the action. It is not 3’eceived in an action of assumpsit, although the plea avers fraud by way of defence. To this effect are all the standard elementary treatises on evidence. 1 Greenleaf on Ev. §§ 54, 55; 1 Wharton on Ev. § 47; 1 Best on Ev. §§ 257, 258; 2 Starkie on Ev. (Metcalf’s ed.), 367 (side p.), et seq; 1 Phillip's Ev. 757, and notes. The authorities, English and American, seem to be uniforcnly the same way. I content myself with a notice of a few only of the adjudged cases.
Humphrey v. Humphrey, 7 Conn. R. 116, was a case of petition by the husband for divorce from his wife for alleged adultery. After testimony had been given on behalf of the petitioner tending to raise the presumption: of adultery on the part of the wife, she offered, by way of rebuttal, evidence of her fair character. Dogget, J., in delivering the opinion of the court, which is often cited, said that in no instance within his knowledge had such evidence been received in any civil proceeding unless character was thereby put in issue. “ Causes charging cruelty, gross fraud, and even forgery,” he said, “are often agitated in suits by individuals; and the result not unfrequently deeply affects the property and reputation of the party; yet no individual has been permitted to attempt to repel the proof by showing a good reputation. * * * The present is a civil suit. Character is not put in issue by the proceedings; and if it can be given in evidence, it may be given in evidence in all inquiries into facts affecting-the reputation in other civil cases. This principle would lead to great uncertainty, and be productive of no benefit in the administration of justice.”
In Anderson’s ex’rs v. Long & others, 10 Serg. & R. 55, the action was debt on bond. Eraud of plaintiff’s tes *481 tator, James Anderson, was one of the defences. Evidence of the character of Anderson for honesty and integrity was offered. Chief Justice Tilghman, in the ion of the court delivered by him, said: “ The plaintiff’s counsel say that the character of J ames Anderson was put in issue here because the defendants accused him of fraud; but this is not-putting his character in issue. By the same mode of reasoning the defendant’s character is put in issue in every action of assumpsit, because the declaration charges him with an intent to deceive and defraud the plaintiff. Indeed, in most of the controversies in courts of justice it may be said, with some degree of truth, that character is in question; because an honest man would not act with injustice. But putting character in issue is a technical expression and confined to certain actions, from the nature of w'hich the character of the parties, or some of them, is of particular importance. Such is the action brought by one man against another for seducing his wife and having criminal conversation with.her. * * So in an action of slander the plaintiff in Ms declaration asserts Ms own good character, and avers the intent of the defendant to rob him of it. He puts his character in issue, therefore, and the defendant is at liberty to impeach it. But it has never been supposed that character is put in issue merely by the charge of fraud made by one party against the other.”
In Nash & others v. Gilkeson & others, 5 Serg. & R. 352, the action, as in the present case, was assumpsit; and the plaintiff’s having given evidence which, the defendants supposed, tended to impeach the honesty of Gilkeson, their testator, they offered evidence in support of his character, which was admitted. Gibson, J., speaking for the court, said: “ There cannot be the least doubt but the evidence was improperly received. Gilkeson’s general character was not put in issue by the nature of the-action; *482 and it never was pretended that where a party is incidually charged by the evidence with the commission of a fraud, that the charge can be rebutted by evidence of general good character. To this rule I know of no exception.”
If the argument of the counsel was, to any extent, based on the supposition that it was competent for the defendant to adduce evidence in support oí the character of his testator for truth, the testimony of the testator on the former trial being before the jury, the argument was equally objectionable. The testator’s character for truth had not been impeached by direct evidence, or in any of the modes specified in George & others v. Pilcher & others, 28 Gratt. 300, or in any way known to the law; and until it'was so impeached, no evidence in support of it was admissible.
It has been held that if a person on trial for a criminal offence offer no evidence of his good character, although he may do so if he will, no legal inference can arise from such omission that he is guilty of the offence charged, or that his character is bad ; nor will such omission authorize an argument to the jury against his general good character. State v. Upham, 38 Maine R. 261.
It seems very clear to me, therefore, that no error was committed in giving the instruction complained of. While great latitude should be accorded to counsel in arguments to the jury, and their just privileges be in no way abridged, the presiding judge would be wanting in duty if he should remain passive and allow the jury to be misled by an argument addressed to them entirely foreign to the issue—wholly unwarranted by the law and the facts of the case.
After the motion for a new trial for the cause stated in the second bill of exceptions had been overruled, the motion was renewed, founded on the affidavit of two of the jurors to the effect, substantially, that they had mis *483 taken the law of the case in one respect ancl had been misled by the instruction before referred to. The motion was again overruled and the third bill of taken.
The general rule is, and the exceptions to it are rare, that the testimony of jurors ought not to be received to impeach their own verdict. Bull's case, 14 Gratt. 613; Read’s case, 22 Gratt. 924; Steptoe v. Flood's adm'r, supra p. 323 (decided during the present term).
In Bull's case the authorities are reviewed, and in Steptoe v. Floods adm’r the reasons given ljy Judge Moncure why the affidavits of jurors to impeach their own verdict should be. rejected are: 1st, Because they would tend to defeat their own solemn acts; 2d, Because their admission would open the door to tamper with jurymen after they have given their verdict; 3d, Because they would be the* means, in the hands of a dissatisfied juror, to destroy a verdict at any time after he had assented to it. These are sound reasons; and while there are exceptions to this general rule, I am of opinion that the present case does not fall within any of the excepted classes.
Indeed, the decision in Harshbarger's adm'r v. Kinney, 6 Gratt. 287, 300, would seem to be an authority for the rejection of the affidavit in this case.
The fourth bill of exceptions is the basis of the last assignment of error to be noticed. In the course of the trial the plaintiff offered in evidence the deposition of P. A. Hay. On objection raised by defendant’s counsel the court excluded from the jury certain portions of the deposition, and this action of the court is assigned as ■error.
The excluded portions of the deposition were declarations, as represented by the witness, made to him by ■John .M. Waddill, a son of the defendant’s testator, Pleasant Waddill. Under the general rule excluding hearsay evidence it is admitted that these declarations *484 would not be competent evidence in the suit against Pleasant Waddill’s representative; but it is claimed by plaintiff in error that the alleged loss, by robbery, of the gold entrusted to the defendant’s testator for safekeeping was a mere pretence; that there never was in fact any such robbery; that the gold was fraudulently converted by Pleasant "Waddill to his own use with the active assistance of his son ; that there was a conspiracy or concerted scheme between the two fo that end; and that, therefore, the excluded declarations, which related to the gold, were admissible in evidence as the declarations of a conspirator.
The rule regulating the admission of the acts and declarations of one conspirator as evidence against another is stated by a modern English author with his usual accuracy and conciseness as follows: When two or more persons conspire together to commit any offence or actionable wrong, everything said, done or written by any one of them in the execution or furtherance of their common purpose, is deemed to be so said, done or written by every one, and is a relevant fact as against each of them ; but relations of measures taken in the execution or furtherance of any such common purpose are not relevant as such against any conspirators, except those who make them, or are present when they are made. Evidence of acts relevant under this article may not be given until the judge is satisfied that, apart from them, there are prima facie grounds for believingin the existence of the conspiracy. Steven’s Digest of the Law of Evidence (2d ed.), art. 4, p. 6.
This clear statement of the rule is sustained by the best elementary -works on evidence and by the adjudged cases, to some of which I here refer, without comment. 1 Phil, on Ev. (Cowen & Hill’s notes), 5 Amer. ed. 168; 2 Russell on Crimes (8th Amer. ed.), 696, et seq; 2 Best on Ev. § 508; 2 Arch. Prac. and Plead. 119 (side p.); 1 *485 Greenleaf’s Ev. § 111; 1 Wharton’s Ev. §§ 1205, 1206; King v. Hardy, 24 How. St. Trials, 451-3; Chief Justice Marshall in Burr’s case, 2 Harr’s Trial, 539; Queen v. Blake, 6 Ad. & El. N. S. (51 E. C. L.) 126; Sand’s case, 21 Gratt. 871; Clawson v. State, 14 Ohio St. R. 234; Clinton v. Estes, 20 Ark. R. 216, 224, 225; Ormsby v. People, 53 New York R. 472.
Further, it is well’settled, both on principle and authority, that after the conspiracy has been consummated, the common purpose carried fully into effect, no subsequent declarations of any of the conspirators not made in the presence of others, are admissible as evidence against the latter.
Hnder the rules and principles which have been stated, the first enquiry is, does the evidence admitted establish the alleged conspiracy? Hoes it furnish prima fade grounds for believing in the existence of the conspiracy, so as to make it proper to admit as evidence the declarations which were excluded ?
A belief in the existence of the conspiracy involves, of necessity, the assumption that the alleged robbery was never committed, that Pleasant Waddill swore falsely, and that the witnesses who sustained him in his statement either perjured themselves or were deceived by management and artifice on his part.
This is a strong assumption, upon the evidence in the case, and one which the jury and the court below must have considered not justified, or the verdict and judgment would have been different. As a concessum, however, for the purposes of the argument, let it be that Pleasant Waddill, instead of being robbed of the gold, fraudulently retained it for his own use; how is the alleged conspiracy made to appear ?
The following circumstances are relied upon to show it:
At the time the robbery is said to have occurred (May, 1865) John M. Waddill resided in the town of Hauvil'le, *486 bis father residing on his farm, a little way off, it seems. ^-n f^e fall of 1865 John M. Waddill removed with his to Madison, North Carolina, where he opened a store and commenced merchandising. According to a statement of his wife, while on a visit with her to his. father in the fall of 1866, his father gave him $200 in gold coin, and on another visit, in the fall of the next year (1867), he received $1,500 in like coin. These are the only sums of money directly proved to have been received by him traceable to his father. The witness Hay says that he always noticed that when John M. Waddill went to Danville he seemed to have more gold on his return than when he left. He speaks of having seen him on one occasion with a bag of gold, which he dropped in the streets of Madison while drunk, and although he did not count it, he supposed it amounted to some four hundred, or five hundred, or' six hundred dollars. He could not tell the precise amount. This-was about February, 1868, and, therefore, not long after the time when, as stated by Waddill’s wife, he received the $1,500. An alleged statement made by Waddill ü> the witness in connection with the gold dropped in the street was amongst the declarations excluded from the jury. This was the most important. The other declarations which were excluded, if ever made, do not appear very material. This witness further speaks of seeing Waddill on various occasions paying out gold, not in large quantities, for purchases made, and exchanging gold occasionally for greenbacks. Another witness, speaks of having seen him on one occasion in a drunken spree taking gold from his trunk and scattering it about his room. He could not say what the amount was. It was proved by Waddill’s wife that he received $250 in gold coin from Texas in February, perhaps 1868, and Hay also says that he knew that he received from Texas about $180 in gold. It is not clear whether these wit *487 nesses were spéaking of the same occasion or of different occasions when these amounts were received. It was also proved that Waddill took in gold for sales made at his store.
These, I believe, are all the circumstances of any moment relied on to show the alleged concert between the parties to defraud the bank of the gold entrusted to its depositary. They do not, I think, make a prima facie case of conspiracy. Giving credit to the witnesses, the only gold proved to have been received from his father by John M. Waddill was the two sums mentioned by his wife, one of which was received eighteen months after the alleged robbery, and the other two and a half years thereafter. If the gold given to him by his father was the gold of the bank, the evidence admitted was not sufficient to show guilty knowledge on the part of the son. It appears that the father was a wealthy man, or at least a man of means, and in his testimony proved-as given on the first trial he stated that he had received gold from several sources, the amounts not mentioned.
But -without further elaboration upon the assumption that the gold was fraudulently retained by Pleasant Waddill, if there was any conspiracy at all between these parties, it was either that the son should dispose of the gold as his father’s agent and account to him for it, or else that it should be appropriated and divided between them.
Upon the first hypothesis, if true, the excluded declarations might perhaps be admissible as evidence in the case, upon the principle that whatever an agent does or says in reference to the business in which he is at the time employed and within the scope of his authority, is done or said by the principal, and may be proved as well in a criminal as a civil case, in like manner as if the evidence applied personally to the *488 principal. Amer. Fur Co. v. United States, 2 Peters, 358, 364.
But no such agency is proved in this case. In fact, it is expressly disproved; for Mrs. Waddill says that pieasant Waddill gave the money to her husband and he spent it; and the whole evidence goes to show that ^ie gold which John M. Waddill had, from whatever source it came, was treated and used by him as his own. There is not a tittle of proof that he ever accounted to his father for a dollar of it, or agreed to do so. PTor is there any proof of any agreement of any sort between them, nor of any admissions or declarations of Pleasant Waddill concerning any gold transactions with his son.
On the proofs, therefore, there was no prima, fade case, nor indeed any case made, establishing the supposed agency, and hence, on the first hypothesis, the declarations were properly excluded.
If, on the other hand, the second hypothesis be warranted by the evidence, to-wit: that the twro fraudulently combined to appropriate the gold and divide it between them, then the plot being accomplished, the subsequent declarations of neither could be used as evidence against the other. Such was the principle sanctioned by the court of queen’s bench in the case of Queen v. Blake, before cited. There the defendant was charged with conspiring with one Tye and others to defraud the revenue, and it was showm by the prosecution that the defendant was a landing waiter and Tye an agent for importers at the custom house; it being their duty each to make entries of the contents of cases imported, so as to check the other. On thirteen occasions they made false entries, entering packages at less than their real bulk. Tye’s check-book •was offered by the prosecution for the pui’pose of *489 showing by the counterfoil that the defendant received from him part of the money of which the government had been defrauded by their operations; but this rejected by the court, on the ground that the statement was made after the. plot loas consummated, and related only to the distributing of plunder.
Upon the ivhole case, I am of opinion that there is no error in the rulings of the court below, and that the judgments complained of should be affirmed.
It is worthy of notice that although the officers of the bank had full knowledge, as early as May, 1865, of the intention of Waddill to set up the rohheiy as a defence against the claim of the bank, and must have known the facts and the circumstances on which he relied, no suit was instituted against him until March, 1872, nearly seven years after the alleged robbery. While the case was pending in this court on the first writ of error, the defendant and his son, John M. Waddill, both died. At the second trial the chief witnesses for the plaintiff were the wife of John M. Waddill and P. A. Hay, who, it would seem, testified in the case for the first time, the former under circumstances of estrangement from her husband’s family connections and under feelings of resentment, in which Hay avowedly sympathized. The last jury that tried the case was a special jury selected under the statute, and had means of weighing the testimony and testing the credit of the witnesses of which this court is not possessed. The verdict of such a jury, approved by the trial judge, negativing the assumption on which the charge of conspiracy was necessarily founded, is entitled to some consideration in the appellate court in determining the question whether a prima facie case of conspiracy was made out by the evidence.
*490 Anderson and Staples, J’s, concurred in the opinion of Burks, J.
Christian, J., concurred in the opinion of Burks, J.,. as to- the refusal of a new trial, on the ground that, the verdict was contrary to the evidence. He dissen bed on the second exception. He considered that this, was a case which makes an attack upon character. The suit charged Pleasant "Waddill with fraud. lie-also thought that the court erred in excluding the statements of John M. Waddill, the son of Pleasant. Waddill.
Moncure, P., concurred in the opinion of Christian, J.
Judgment affirmed.