## HINTON v. NELMS.

1. A father purchased certain slaves, paid for them with his own money, and took a conveyance of them in the name of his son, after which they were sold as the property of the father, under execution, and purchased by C. A few days after the purchase, they were secretly taken out of the possession of C, by the son, and whilst in his possession, were sold by C to N, by a conveyance, reciting, " which said slaves have been removed, or stolen from this county ; I therefore convey the chance of said slaves only, and convey such title as is in me, or all the title I ever had at any time." Suit being brought by N, against the son, Held, that this was not the transfer of a *chose in action*, unless at the time of the sale, the son was in the actual possession of the slaves, openly asserting a title, adverse to that of C : and that the title thus asserted by him was *bona fide*. That if the purchase, under which the son claimed title, was made by the father, and the title taken in the name of the son, to defeat the creditor of the father, it would not prevent C, or one clothed with the title of C, from suing for the recovery of the property.

2. A party has a right to insist, that a proper charge, shall be given in the terms in which it is asked, and the giving a charge subsequently, the same in substance, will not cure the error.

Error to the Circuit Court of Perry. Before the Hon. G. Goldthwaite.

DETINUE by defendant in error, who was the plaintiff below, against Hinton, to recover three negro slaves. A verdict and judgment was rendered for the slaves, or their alternate value, to reverse which Hinton brings the case to this

court. The facts appear from a bill of exceptions in the cause, taken upon the trial. The plaintiff below claimed title to the slaves in suit, under a bill of sale from one Caldwell, dated 17th October, 1845, which after reciting the receipt of $300, in full payment for the slaves, states, "which said slaves have been removed, or stolen from this (Panola) county. I therefore convey the chance of said slaves only, and convey such title as is in me, or all the title I ever had at any time." Plaintiff further offered proof, to show that said Caldwell had purchased said slaves, at a sale made by the sheriff of Panola county, in the State of Mississippi, under an execution against one James Hinton, the father of the plaintiff in error, and that in a few days after such purchase, said slaves were secretly taken out of Caldwell's possession, by the defendant in error, who claimed said slaves under a bill of sale, made by one Jeffries to him in 1841, which bill of sale was read to the jury, Jeffries being at the time of the sale the owner. The slaves were delivered to said James B. Hinton, and were in his possession at the time of the execution of the bill of sale by Caldwell to plaintiff below. The slaves were purchased with the money of the father, James Hinton, and were placed in his possession, where they remained until they were levied on, and sold for his debts, existing prior to the purchase from Jeffries.

The circuit court was asked to charge, by the defendant below—1. That the bill of sale from Caldwell to plaintiff, as herein set forth, was not such an instrument as would authorize the plaintiff to maintain this action in his own name. 2. That if the claim of the defendant to the slaves sued for, was not subordinate, but adverse to the claim of the plaintiff below, he could not recover in his own name. These charges, as asked, the court refused to give, but charged the jury, that if the bill of sale from Jeffries to the defendant below, was fraudulent, and if said property was the property of the said James Hinton, and was sold under executions against him, and purchased by Caldwell, to whom possession was delivered, and that afterwards, Caldwell was deprived of the possession of said slaves, either by a trespass or a felo-

ny, that he could, under such a state of facts, transfer a title to said slaves to the plaintiff, although not in the actual possession of said slaves; and such a title as would authorize the purchaser to maintain an action in his own name against the person who came to the possession by a trespass, or felony. That if Hinton was in possession of said slaves, at the time of Caldwell's sale to plaintiff below, not as a trespasser, but by virtue of the bill of sale from Jeffries to him, which he believed to be *bona fide,* that then Nelms could not assert the title in his own name, so as to recover said slaves. That if James Hinton was indebted at the time he purchased said slaves from Jeffries, and if the purchase was made by him, (James Hinton,) and the bill of sale taken in the name of his son, (the defendant,) by way of gift to him, the slaves so given would be liable to the debts of said James, existing at the time of said gift, notwithstanding his property, at the time of the gift might considerably have exceeded the value of the slaves given. The refusal of the court to give the charge asked, and the charge given, the plaintiff assigns as error in this court.

GARROTT, for the plaintiff in error, made the following points :

The conclusion of the bill of sale to Nelms is, " which negroes have been removed or stolen from this county. I therefore convey the chance of said negroes only. I convey such title as is in me, or all the title I ever had at any time," &c. The first charge of the court asked for and refused was this naked question, " can the vendee, under such title, support an action in his own name," unconnected with any other fact ? Plaintiff's bill of sale shows, that at the time of the sale, his vendor was not in possession—the *mere chance* of recovery was sold. The proof fully justifies the inference that the negroes were taken from the possession of Caldwell by the plaintiff in error, and as he took under a claim of title, he certainly was not guilty of a felony. The charge refused, therefore, was, in effect, to charge the jury, that if, in obtaining possession, the defendant below committed a trespass, that still the plaintiff below would be entitled to recover, in his own name. This position cannnt be sustained.

The law will not allow such a sale of a right of action.—Brown v. Lipscomb, 9 Porter, 472; Goodwin v. Loyd, 8 Ib. 237.

2. Refusal to charge is equally untenable. The court refused to charge, that if the title of defendant below was paramount and adverse to that of plaintiff's vendor, that still the plaintiff below would be authorized to sue and recover in his own name. This refusal is wholly unconnected with any other charge, and is clearly erroneous, as decided in Foster v. Goree, 5 Ala. R. 425.

3. The first charge is, that if Caldwell lose his possession, either by a trespass or a felony, he could transfer his right of action. If he lost possession by a trespass, he had a right to sue in his own name, but he could not transfer that right to another. See Brown v. Lipscomb, *supra*.

4. The ground upon which the court seems to have based the other charges is, that as James Hinton, the father, was indebted at the time of the gift to his son on the administration bond, that the gift was void, and therefore the son could not hold adversely.

Now what title did the defendant below get by his bill of sale from Jeffries? As between him and Jeffries it was good, as between him and his father it was good. It was good against the world, until avoided by the creditor. If this debt had been paid by the father, the title of the son would have been perfect, without any other act on the part of either. There was, therefore, only a lingering equity in favor of the creditor, to have his debt paid out of the property, consequently the title of the son was not void, except as to the creditor.

But if the title of the son was void, and was not obtained by force or fraud, as his was not, his possession would still be adverse. Wier v. Davies & Humphries, 4 Ala. R. 442; Horton v. Smith, 8 Ib. 74; La Frambois v. Jackson, 8 Cow. 589; Clapp v. Bromagham, 9 Ib. 530.

A. B. MOORE, contra.

1. The proof in this case shows, that the plaintiff in error is the voluntary donee of his father, James Hinton, and that

29

the donor was largely indebted at the time of making the gift. The gift is therefore within the statute of frauds, and void as to existing creditors. See Clay's Dig. 254, § 2.

2. A voluntary conveyance will never be upheld to defeat a prior creditor, whatever be the amount of his demand, although the donor reserve property sufficient to satisfy the debt. Nor is there any exception to this rule, in favor of advancements made to children by parents. See O'Donnel v. Crawford, 4 Dev. 197; Read v. Livingston, 3 Johns. Ch. R. 481.

3. In this case, the purchase being made by the father, in the name of the son, was fraudulent, as well as voluntary, and according to the well established current of decisions, would be void against existing creditors. See Elliott v. Horn, 10 Ala. Rep. 352.

4. If the owner of a personal chattel is not in the actual possession, but is withheld by another, and the owner is ignorant or the fact, and under such circumstances parts with the title, his purchaser would succeed to his rights, and be entitled to sue in his own name. See Brown v. Lipscomb, 9 Porter, 479.

5. The proof clearly shows, that Caldwell, the owner, did not know, at the time he sold the slaves in question to Nelms, the defendant in error, that they were withheld by any one, or if they were he did not know by whom, or under what pretence. The title, therefore, of Caldwell, was not converted into a *chose in action.* See cases last cited.

6. To make the possession of Hinton adverse, his claim must be *bona fide,* and Caldwell must have had knowledge of his claim, at the time he sold to Nelms. See cases last cited.

CHILTON, J.—The main question involved in this case is, whether the sale from Caldwell to the plaintiff below, can be sustained, or whether it amounts to a transfer of a *chose in action,* and is therefore void. The question is one of importance, as frequently connecting itself with the business transactions of the community, and has received a careful investigation. It appears, both from the bill of sale, and the proof, that at the time of the conveyance from Caldwell

to Nelms, (the plaintiff below,) the slaves conveyed were in the possession of the defendant, who claimed them as his own. The defendant held a bill of sale for them from Jeffries, but the money which he paid Jeffries, in consideration of the purchase, was advanced by his father, as whose property they were sold, for a demand existing at the time of the purchase, and purchased at sheriff's sale by Caldwell, the plaintiff's vendor. There can be no question, but that the property was liable to the debts of the father, existing at the time of the gift to the son; this is not gainsayed by the counsel for the plaintiff in error, but it is insisted, that as *no fraud in fact is shown*, and as the bill of sale to the son conveyed a good title, as against every one except the creditor of the father; it was sufficient to render his possession adverse, and thus to change the interest of Caldwell, into a *chose in action*, which could not be assigned. *Choses* in action, as contradistinguished from things in possession, may be defined to be, such things as the owner has not in possession, but merely a right of action to recover the possession. 2 Bl. Com. 389, 397; 1 Chit. Pr. 99; 1 Bouv. L. Dic. 260; 1 Sup. to Ves. jr., 26, 59. One of the qualities pertaining to such rights at common law, is, that they are not assignable. The reason of this rule was, to prevent maintenance, (Co. Lit. 214,) and to prevent the weak from being oppressed by a powerful antagonist, to whom his competitor might assign his title, and who, by his wealth, his influence, or his power, might prevent the ends of justice. Its policy also is found in the fact, that it discourages litigation, by preventing those who will not sue themselves, from transferring their interest to others of more litigious dispositions. 2 Woodeson's Lec. 387. Blackstone calls it " the strict rule of the ancient common law," and assigns as the reason for the rule, " because it was thought to be a great encouragement to litigiousness, if a man were allowed to make over to a stranger his right of going to law." 2 Com. 442. See also, Greenby & Kellogg v. Wilcocks, 2 Johns. Rep. 1; Coolidge v. Ruggles, 15 Mass. 387. Whatever may be said in regard to the rule having its origin in a state of society different from ours, it has been too long recognized by the judicial decisions of this State now to be

departed from. Holloway v. Lowe, 7 Porter's Rep. 488. But while the rule is adhered to, the difficulty consists as to its application—as to when the party who is out of possession, shall be said to have a mere right of action, which he may not assign. In other words, what shall be considered an adverse possession so as to change the title of the owner into a mere right to sue.

Several decisions of this court have been made upon this point. In Goodwin v. Loyd, 8 Porter, 237, the plaintiff purchased certain slaves from one who had title, but who, at the time of the sale, was out of possession. The party in possession, and from whom the plaintiff's vendor derived title, claimed that he had merely loaned them to the plaintiff's vendor, and the question was made, whether the plaintiff could, under such a state of facts recover. The circuit court held, if the plaintiff's purchase was absolute, and *bona fide*, he had a right to recover, notwithstanding the defendant may have had wrongful possession of the slaves at the time of the sale to the plaintiff.

This court, upon the authority of Stedman v. Reddick, 4 Hawkes's Rep. 29, and Stogdale v. Fergate, 2 Marshall's R. 136, reversed the decision of the circuit court, and, dissenting from the opinion of Judge Story in the case of the brig Sarah Ann, 2 Sumner's Rep. 206, determine, that the plaintiff had purchased a right of action, which by the common law was not assignable, and which he could not assert in his own name. The question, however, is left open, "as to whether cases may not exist, in which the act of a mere trespasser, or wrong-doer, would operate no change of possession." The same point again came before this court in the subsequent case of Brown v. Lipscomb, 9 Porter's Rep. 472, and the additional question was raised, whether a possession of defendant, acquired by the trespass, or fraudulently, operated to change the right of the owner, into a *chose in action*, so as to deprive him of the power to sell the slaves. The court say, "If an owner of a personal chattel, is not in the actual possession, but it is withheld by another, and he is ignorant of the fact, and under such circumstances, parts with the title, it is conceived that his purchaser would succeed to his rights; but if the owner is dispossessed by one, *bona fide*

claiming title, and the fact of the dispossession, and *bona fide* claim, is known to him, his title is changed into a *chose in action*, which cannot be conveyed or transferred to another." So that according to the principles settled in the case last cited, to avoid the sale of Caldwell to the plaintiff below, the defendant, at the time of the sale, must have had, *actual possession, a bona fide claim of title*, and Caldwell must have knowledge *at the time of his sale* to the plaintiff, of the assertion by defendant of his claim, all which, the case decides, should be left to the decision of the jury. In Sims v. Canfield, Ex'r, &c. 2 Ala. Rep. 555, it is held, that an adverse possession of six years, *under claim of title*, shall perfect the possessor's right to the property, so as to enable him to maintain an action against the original owner who may afterwards acquire the possession, and that the statute of limitations commenced running, from the time the defendant came to the possession of the property. Nothing is said in this case, as to the manner in which the defendant acquired the possession, or as to the *bona fides* of his claim.

In Weir v. Davis & Humphries, 4 Ala. Rep. 442, the rule laid down in Brown v. Lipscomb is explained, and enforced, and it is held, that, although a purchaser of a slave from an administratrix at private sale, took no title, yet having *bona fide* purchased, and paid for the slave, it was not, while in his possession, subject to be levied on by execution against the estate, which the seller represented. " The sale," it is said, " is illegal, and passes no title, yet the purchase money was received, and appropriated by the administratrix, in due course of administration. In equity, the purchaser could charge the slave with the payment of the sum which he has paid into the estate, and which has been appropriated as above stated. In the case of Dunklin v. Wilkins, 5 Ala. Rep. 199, and Foster v. Goree, Ib. 424, this court re-affirm the decision of Brown v. Lipscomb, and in the first case, decide, that the conversion of a chattel must be known by the owner, to render a sale by him inoperative. See also Strong v. Strong, 6 Ala. Rep. 345; Carlos, use, &c. v. Ansley, 8 Ala. Rep. 902; Horton v. Smith, Ib. 73.

In Ansley v. Carlos, it is held, the mere fact that the defendant set up a hostile claim, was not sufficient, but that the

possession must have been acquired, and asserted in good faith, to change the title of the owner into a right of action. 8 Ala. R. 903. See also Doe ex dem. Farmer's Heirs v. Eslava, 11 Ala. Rep. 1028, Ib. 1045, and Lamar v. Minter, at the present term. I have thus collated our own decisions, upon this subject, that I might deduce the principles decided, and if possible, by their application to this case, put this vexed question to rest. I think the rule as laid down in Brown v. Lipscomb, 9 Por. Rep. 432, is sustained both by reason and authority, and should be adhered to from considerations of sound policy. The defendant, in order to avoid the sale, made by Caldwell to the plaintiff below, must show—1. That *at the time* of the sale, he had the actual possession of the slaves sued for. 2. He must be able to connect his possession, with a *bona fide claim* of title. 3. And which claim of title he openly asserts, as hostile, or adverse to the title of Caldwell. If his claim be founded in fraud—if he is but the stakeholder, receiving the conveyance from Jeffries, to screen the property from his father's debts, when the father's money, which should have paid those debts, actually paid for the slaves, his fraud shall not avail him, so as to affect the rights of such creditors, or those who come in as purchasers, *bona fide*, and for valuable consideration, under their execution. The law sets the seal of its decided condemnation upon such title, holding it unavailing for any purpose, or at any time, as against those intended to be injuriously affected by it. In the language of Mr. Roberts, " all the partialities of the law, expire under its antipathy to fraud." Rob. on Fraud. Conv. 520; see Pickering v. Lord Stamford, 2 Ves. jr. 280 ; 4 Verm. R. 405 ; Smithwick v. Jordan, 15 Mass. R. 113; Gilbert v. Burgott, 10 Johns. Rep. 457; Brooks v. Marbury, 11 Wheat. 90 ; Gubbins v. Creed, 2 Sch. & Lefr. 223; Ib. 474; Jackson ex dem. Scofield v. Collins, 3 Cow. 89.

The claim of title aside, the defendant stands in the attitude of a bare trespasser. Can he be allowed to avail himself of force, any more than of fraud, to defeat the rights of the plaintiff, by depriving Caldwell, his vendor, of his free agency in disposing of the slaves? Is it true, that if one by brute force, or by felony, wrest from me my property, he thereby acquires a title paramount to my *bona fide* assignee?

Hinton v. Nelms.

It is clear to my mind, that the transfer of the title, does not in such case, come within the mischief intended to be remedied by the laws against champerty and maintenance. The reason, as we have seen, which lies at the foundation of these laws, is the prevention of litigation, and the protection of the weak and helpless against the power and influence of some assignee, who might prevent the ends of justice in their oppression. Certainly they were never designed to postpone the peaceful remedy which the law ordinarily affords in difference, to fraud, or lawless violence. I do not wish to be considered as trenching upon the decisions which authorize a party in possession, holding adverse to the rightful owner, from invoking the statute of limitations. It does not necessarily follow, that in every case where the owner by his *laches* would lose his estate, the possessor should have such interest as would avoid the deed of his adversary. 2 Russ. 156; 1 Leach, 522.

But without extending this opinion, it is clear from what has been said, the charge given by the court, was entirely correct, and conforms to the views here ascertained, and also that the court very properly refused to charge the jury, that the plaintiff could not maintain the action in his own name under the bill of sale, but as the adverse possession, and *bona fide* assertion of claim, was a matter for the jury, as was decided in Brown v. Lipscomb, *supra*, the court should have given, as asked for by the plaintiff in error, the second charge, which refers the adverse title to the jury. See also Hall v. Dewey, et al. 10 Verm. Rep. 593; Stephens v. Dewing, 2 Aik. R. 112. The court in substance gives the charge asked, in a manner calculated to enlighten the jury, but the rule is, that when a charge that is proper is prayed to be given, the party has a right to insist upon it as asked, and the subsequently giving a charge the same in substance, will not cure the erroneous refusal. Clealand v. Walker, 11 Ala. R. 1059.

Let the judgment be reversed, and the cause remanded.