# FARLEY vs. SMITH.

[REAL ACTION IN NATURE OF EJECTMENT.]

1. *Charge on part of evidence.*—A charge, which, on the facts therein hypothetically stated, asserts a correct legal proposition, and which is applicable to the evidence, is not objectionable, because the evidence also tends to prove other facts in addition to those therein stated; and the refusal of such a charge is erroneous.

2. *No adverse possession against United States.*—There can be no adverse possession against the general government; consequently, the statute of limitations does not begin to run against a person who holds under a patent from the United States, before the date of the patent.

3. *What is color of title.*—It is a settled principle of law in this State that a purchaser of lands, holding possession under a bond for titles, and having paid the purchase-money, has color of title, such as will enable him to defend under the statute of limitations, at least from the time when, according to the stipulations of the bond, the title is to be made; but, under our decisions, it is a doubtful question, whether he has such color of title as will vitiate a conveyance by the owner pending such possession.

4. *What constitutes adverse possession.*—The mere act of cutting and removing timber from unenclosed lands, for two or three weeks each year, during six successive years, and again in like manner, after an interval of sixteen years, during three successive years, does not, *per se*, constitute an adverse possession, such as will avoid a conveyance executed during the interval, or support a title by prescription against a patent issued during the interval.

APPEAL from the Circuit Court of Coosa.
Tried before the Hon. NAT. COOK.

THIS action was brought by James A. Farley, against Neill Smith, to recover a tract of land containing three hundred and twenty acres, which was described in the complaint as the "north half of section eighteen, township nineteen, range nineteen, east, in the Tallapoosa land-district"; and was commenced on the 18th April, 1859. The defendant pleaded "not guilty, and the statutes of limitation of ten and twenty years, with leave to plead any other proper matter"; and issue was joined on these pleas. The land in controversy was the reservation of a Creek Indian, who sold and conveyed it, by a contract which was dated the 26th November, 1834, and which was approved by the

Farley v. Smith.

president of the United States on the 1st February, 1835, to one Malcolm Gilchrist, who, on the 1st February, 1838, sold and conveyed it to David B. Grant and Thomas Hoxey; and said Grant sold and conveyed his interest to Hoxey on the 25th January, 1845. The plaintiff deduced title under a patent from the United States to said Hoxey, dated the 6th August, 1846, and a deed from Hoxey and wife to himself, dated the 29th December, 1854. The defendant purchased the land, in February, 1858, at a sale made under an order of the orphans' court, as belonging to the estate of Malcolm Smith, deceased; and, to show color of title in said Smith, he proved and read in evidence a bond for titles, dated the 4th December, 1834, and signed by James A. and Albert G. Wall as agents for Malcolm Gilchrist, which recited the payment of the purchase-money by said Smith, and was conditioned that "the said Gilchrist, his heirs and assigns, shall make, or cause to be made, unto the said Malcolm Smith, his heirs or assigns, good and lawful titles in fee-simple to the above-described land, so soon as he may be able to obtain the patent therefor from the government."

"The proof showed that no part of the land had been cleared or fenced. The only proof of possession by Malcolm Smith in his life-time was evidence tending to show that, in the years 1835, 1836, 1837, and 1838, he had cut timber for making stocks, boards, &c., a few days each year; that his hands went out in the morning, cut and hauled off the timber, made the boards, and hauled them off. In July, 1836, one ———— was on the land, in company with said Smith, and saw his hands at work, cutting timber; and there was a shelter out among the timber on the land, about ten or twelve feet square, where the hands rested at noon, and where said Smith and ———— ate a snack; but the proof showed that this was the only use made of it, and that it was not used to sleep in, nor occupied for any other purpose. The defendant did not prove any cutting of timber by said Smith, on said land, after 1838, nor any use of it in any way down to 1856, when the defendant cut timber on it as Malcolm Smith had done; and he again cut timber on it in 1857, 1858, and 1859. The defendant offered

evidence, also, tending to show that said Malcolm Smith owned and kept a saw-mill about one mile from the land in controversy; that said land adjoined the land on which said saw-mill was situated, and, at the date of said bond by Gilchrist's agents, was poor, piney-woods land, valuable only for the timber on it; that said Smith, in 1835, while on said land in company with a friend, claimed it as his own, had his hands there cutting timber for saw-logs, and had on it a small cabin, some ten or twelve feet square, where he and his friend ate their snack; that in the years 1836, 1837, and 1838, he had several hands on said land, engaged in cutting and hauling saw-logs to his said mill from time to time; that he had timber hauled from said land, in 1838, to Wetumpka, for building a ware-house shed; that, in 1839, he had his wagons hauling saw-logs to his mill from the direction in which the land was situated, and that the wagons were absent long enough to have gone to said land and returned; that, in the years 1839 and 1840, there were numerous signs on the land of considerable timber having been lately cut thereon; that the defendant, at different times, in the years 1856, 1857, 1858, and 1859, had his hands engaged in cutting timber on the land, and making boards; and that in one or two of said years, while on the land, he claimed it as his own, and forbade persons from taking pine from it. There was no proof showing that, from the year 1838, up to the death of said Malcolm Smith in 1857, there was any other person in possession of said land, or claiming the same."

"This was all the evidence tended to show in relation to the defendant's right to the land, and his possession of it; and the plaintiff asked the court, on this state of facts, to charge the jury, that if they believed, from the evidence, that said land was lying in the woods, and had never been cleared, nor enclosed by any fence; and that the only claim Malcolm Smith had to it was by virtue of the bond for titles which had been read in evidence; and that the only acts of possession or ownership exercised over it by him was to cut timber, &c., and haul it off, for use elsewhere, for two or three weeks in each of the years 1835, 1836, 1837, and 1838; and that he did not, after the year 1838, cut tim-

ber, or do any other act showing possession or ownership, down to the year 1856; and that then the defendant cut timber, &c., during a short period, in the summer of that year, and so again in 1857 and 1858, for a short period in each,—then the said Malcolm Smith did not have such a possession of said lands as, in judgment of law, amounted to adverse possession." The court refused to give this charge, and the plaintiff excepted to its refusal; and he now assigns this refusal as error, with other rulings of the court which require no particular notice.

L. E. PARSONS, for appellant.

N. S. GRAHAM, *contra.*

A. J. WALKER, C. J.—It is contended that the charge, which the court below refused to give, would have excluded from the consideration of the jury two material facts, and was, therefore, objectionable. Those two facts are, the payment of the purchase-money, and the cutting of timber on the land in 1839 and 1840. The bond for titles recites the payment of the purchase-money; and it might be argued at least, with much plausibility, that the request to charge, by referring to the bond for title as the source of the defendant's claim, embraces the fact of the payment of the purchase-money. But the charge asked the enunciation of a certain conclusion to the jury, if they believed certain facts. Now, if, upon the finding of those facts by the jury, the conclusion was correct, notwithstanding the existence of another fact, the omission of that fact is no reason for the refusal of the charge. If, then, it be found that the proposition of the charge was correct, notwithstanding the existence of the omitted fact, it was erroneous to refuse it. Therefore, if the charge does ignore the fact of the payment of the purchase-money, it merely devolves on us the duty of considering it upon the concession of the omitted fact. In reference to the other asserted fact, that timber was cut upon the land in 1839 and 1840, it is barely necessary to say, that there was only a slight tendency of evidence to prove it, and the charge had the effect of referring the credibility and consideration of that evidence

3

to the jury, and claiming a verdict only upon their denial of all influence to that evidence. This certainly afforded no ground for its refusal.

[2.] The plaintiff claimed title to the *locus in quo*, under a patent to Hoxey, dated 6th August, 1846, as the assignee of a Creek Indian *reservation*, and a deed from Hoxey and wife to him, dated 29th December, 1854. This suit was commenced in 1859. It is decided in this State, that the statute of limitations could not commence to run against the plaintiff, holding under the patent above stated, before the date of the patent.—*Iverson & Robinson v. Dubose*, 27 Ala. 418; *Wright v. Swan*, 6 Porter, 84. The interval, however, between the date of the patent and the commencement of the suit, is sufficiently long to have ripened an adverse possession into a title. During this interval, the conveyance to the plaintiff was made. The question of adverse possession may, therefore, have arisen in the case, either in reference to the statute of limitations, or the validity of the plaintiff's deed, or in reference to both. The record does not enable us to ascertain the precise point of view, in which the question became material on the trial. We shall, therefore, endeavor to adapt our opinion to the appropriate government of the proceedings of the circuit court, whether the question is material in the one or the other aspect, or in both.

[3.] Where the purchaser of land holds under a bond for titles, and has paid the purchase-money, it is settled in this State, that he has color of title, *at least* after the time when, according to the stipulation of the bond, the title was to be made, where the defense is the statute of limitations. On the other hand, our decisions leave room for controversy, whether, under such circumstances, there would be such color of title as would vitiate a conveyance by the owner, while the land was in possession of the obligee in the bond. *Ormond v. Martin*, 37 Ala. 598; *McQueen v. Ivey*, 36 Ala. 308; *Sellers v. Hays*, 17 Ala. 749 ; *Hinton v. Nelms*, 13 Ala. 222. Whether any distinction exists between the evidence requisite to show color of title in the two cases, needs not to be determined here; for, conceding to the defendant that he, and the person through whom he derives his claim, had

·color of title, there is no such possession as is required to sustain his defense, in either aspect.

[4.] The charge requested by the appellant was, that the cutting of timber, and taking it from the land, for two or three weeks in 1835–'36–'37–'38, and then again in 1856–'57–'58, would not sustain the defense of adverse possession. In order that the case can be placed in the most favorable light for the appellee, let it be conceded that the timber was taken from the land, for the like period, during the years 1839 and 1840; and we shall then have a case stronger against the appellant than that which is presented, and, in deciding it, we shall pass upon the refusal of the charge asked, and anticipate what will probably be the most unfavorable aspect of the case against the appellant upon a future trial. We shall then have, as the facts, a cutting and removal of timber from the land, in each year, for six successive years, a suspension of all entry upon the land for sixteen years, and the performance of like acts in reference to it in each one of the three years next preceding this suit. Do such facts constitute a possession requisite to sustain the defense in either of its aspects?

The plaintiff's conveyance was made during the long interval between the acts of cutting and removing timber, and about fourteen years after the last preceding act of that character. The period of ten years next before the institution of this suit commenced in 1849, about nine years after the last antecedent act of cutting and removing timber. To sustain the defense, it is therefore requisite, that the cutting of timber, and its removal from the land, for a short time in each year, should be considered such a possession as would amount to a disseizin of the true owner. Furthermore, it is necessary that that possession should be extended, by construction, through a period of fourteen years, in order that the plaintiff's conveyance may be vitiated by a disseizin subsisting when it was made; and in order that the defense of the statute of limitations may be sustained, it is necessary that such possession should be extended, by construction, through a period of nine years, when prescription would commence, and then farther carried by construction through seven years, up to the time

when the first of the more recent interferences with the timber was committed.

Certainly, an actual residence upon land is not an indispensable element of adverse possession. There must, however, be an actual, visible, and uninterrupted possession; or there can be no dissezin to sustain a prescription, or vitiate a conveyance.—*Herbert v. Hanrick,* 16 Ala. 581; *Blackburn v. Baker,* 7 Porter, 284; *Brown v. Cockerell,* 33 Ala. 38; *Hawk v. Senseman,* 6 S. & R. 21; *Hinton v. Nelms,* 13 Ala. 222. We do not mean that there must be a *pedis possessio* of every part of the land, where there is a title, or color of title; for there a possession of a part is regarded as possession to the boundary specified, if there is no antagonistic possession.—*Herbert v. Hanrick, supra; Jackson v. Oltz,* 8 Wend. 440; *Overton v. Davison,* 1 Grattan, 211. Nor do we mean that there must be, in all cases, an actual residence upon the land. The possession must be by acts adapted to the character of the land, and must be of a description such as the land is susceptible of. Numerous and conflicting decisions have been made upon this subject, which we cite and refer to as illustrations of the principle. *Tredwell v. Reddick,* 1 Ired. Law, 56; *Williams v. Buchanan,* 1 Ired. Law, 535; *Boston Mill Corporation v. Bullfinch,* 6 Mass. 283; Ang. on Lim. §§ 391-4-6-8; 2 Smith's Leading Cases, 563; *McBeth v. Donnelly,* Dudley's Law & Eq. 177; *Overton v. Davison,* 1 Gratt. 211; *Pro. of Ken. Purchase v. Springer,* 4 Mass. 416; *Bailey v. Irby,* 2 Nott & McC. 343; *Davidson v. Beaty,* 3 H. & M. 621; *Parley v. English,* 5 Gratt. 141; *Slater v. Jepherson,* 6 Cush. R. 129; *Porter v. Kennedy,* 1 McMullen, 354.

The possession must always be as definite as the character of the land is susceptible of, and must be evidenced by public acts, such as a party would exercise over his own property, and would not exercise over another's; must be continued, and so notorious that the owner may reasonably be presumed to have notice of the possession, and of the claim of title. While the cutting and removing of timber from wild lands, unfit for any other purpose, may amount to a possession, which, accompanied by color of title, would constitute a disseizin, it is apparent that the acts of that

character done in this case have not been so continuous, distinct, and notorious, as the rule requires.

Reversed and remanded.