# Eiland v. The State.

## Indictment for Murder.

1. *Charge to jury; what not erroneous as to law of self-defence.* — The court in charging upon the law of self-defence may properly instruct the jury that to justify the taking of life there must be an "*imperious necessity*" existing, or reasonably apparent, to prevent the commission of a felony or great bodily harm.

2. *Misleading charge; when ground for reversal.* — If a charge given has a tendency to mislead, the party objecting to it should ask an explanatory charge; failing to do this, his exception will not be available on error unless the inevitable effect of the charge was to mislead the jury.

3. *Section 2756 of Revised Code, construed.* — Section 2756 of the Revised Code secures to parties the unqualified right to have charges, moved for in writing,

Vol. LII.

[Eiland v. State.]

given in the very terms in which they are written, if embodying correct legal propositions and not abstract or misleading.

4. *Same.* — If the charge requested needs qualification, modification, or restriction, to render it a correct legal proposition, applicable to the evidence, it should be refused. If the court gives a charge, which it might have refused without error, it cannot afterwards add a qualification, however correct in point of law. Any other ruling nullifies the plain terms of the statute.

5. *Same; right to explain charge defined.* — The statute does not prohibit the *explanation* of a charge, in order to relieve it from involvement or obscurity, or to make plain and interpret the terms employed, if necessary to prevent its misleading the jury, or to enable them intelligently to apply to the case before them the principles of law asserted in the charge.

6. *Homicide; duty of retreat.* — Our common law of homicide is derived from that of England, and wherever that law requires the person assaulted to decline the combat, or retreat before he will be excused in taking the life of his adversary, our law requires the same.

7. *Peril of mere battery; will not justify taking of life.* — Peril of a mere indignity to the person or of a battery, from which great bodily harm cannot reasonably be apprehended, will not justify the taking of life, although such peril could not be escaped by retreat, or the danger to it would thereby be increased.

8. *Malice; presumption of, from weapon used.* — A deliberate killing with a deadly weapon is presumed to be malicious; but if the facts and circumstances are in evidence, the presumption must be drawn from the whole evidence and not from the nature of the weapon only. This presumption it is for the jury to draw, and no one fact should be singled out and disconnected from the other evidence, and malice or any other necessary fact inferred from it.

9. *Bad character of deceased; when admissible evidence.* — Evidence of the bad character of the deceased for violence, &c., is admissible when it *illustrates* or tends to illustrate the circumstances attending the homicide, and to qualify, explain, and give meaning and point to the threats and conduct of the deceased at the time of the killing.

10. *Same.* — Such proof is not limited to cases in which the degree of homicide, or the fact that the killing was in self-defence, is doubtful; but it should never be received when there is no act or word of deceased, at the time of the killing, which can be explained or illustrated by such character, or when there is no evidence tending to show that the killing was in self-defence.

11. *Same; province of jury as to.* — It is for the jury to say, in view of the character of the deceased, what his threats and conduct at the time of the homicide really imported, and how far they illustrate the condition of the parties and the motives which actuated them. A charge singling out a particular act or isolated expression of the deceased, and instructing the jury that *that* act or threat cannot be invoked to illustrate this bad character, is an invasion of their province and necessarily erroneous.

12. *Charge; what misleading and properly refused.* — A charge which would authorize the jury to acquit, if the homicide was committed under the apprehension of danger, whether to life or limb, or of lesser injury, without regard to the reasonableness of the apprehension, is properly refused.

13. *Confession; weight to be accorded to.* — There is no rule of law requiring the jury to give equal credence to every part of a confession " unless it is clearly disproved." All of it must be carefully weighed in the light of the surrounding circumstances, the motives which may have induced it, and its consistency with the other evidence, and the jury, without capriciously accepting or rejecting any portion, should credit such parts as they find reason for believing, and reject that part which they find reason for disbelieving.

14. *Homicide, justification for; what cannot be set up.* — The slayer cannot urge in justification of the killing a necessity produced by his own wrongful or unlawful act.

APPEAL from Circuit Court of Russell.

Tried before Hon. J. E. COBB.

The appellant, A. B. Eiland, was indicted for the murder of J. L. Davis. He was convicted of murder in the second de-

[Eiland v. State.]

gree and sentenced to twenty years' imprisonment in the peni-
tentiary.

Many witnesses were introduced on both sides, and the testi-
mony was, in some respects, conflicting. However, it clearly
establishes that the deceased and the prisoner had never been
unfriendly, and continued on friendly terms up to the time of
the fatal rencounter. The prisoner's general reputation " as a
peaceable, quiet, law abiding man " was proved by a number
of witnesses, while, on the other hand, the deceased was shown
to be a quarrelsome, turbulent, reckless, and dangerous man
when under the influence of liquor. It was also shown that
the deceased was a very powerful and muscular man. Some
of the witnesses testified, however, that the prisoner was the
heavier of the two.

On the evening of the killing, Davis, the deceased, came to
Eiland's store and asked for whiskey. Eiland had none, but
procured a bottle of it from a neighboring store and handed it
to Davis, when they both drank together. Davis then asked
for a plug of tobacco which was handed him, Eiland remarking
that there was something due on last year's account. Davis
inquired how much, and Eiland, after referring to his books,
answered two dollars and a half. Davis then said he had not
yet sold any of his cotton, " but would do so next week and pay
every debt he owed in the town ; " at the same time throwing
the tobacco down and starting towards the side door. Eiland
asked " if he was going to pay," to which he replied " No. I
can whip any man who throws two dollars and a half in my
face." Eiland replied with an oath, and inquired of Davis
" what he was running for ? " Davis then went around to the
front door, having picked up a piece of plank as he went.
One witness testified that as Davis went to leave, Eiland asked
him, in a very quiet manner, if he was not going to pay,
and Davis still continuing to move towards the side door,
Eiland remarked to him : " Come back and pay me. You
d——d coward, what are you running for ? " Davis answered
back : " Come out here and I 'll settle with you," or " D——n
you I 'll settle with you out here." Eiland replied : " No ; I
won't come out there." There was some conflict in the testi-
mony as to what Davis did after coming around to the front of
the store. Some of the witnesses testified that he remained
about there " some little time," cursing Eiland, who was then
standing on the portico of his store, the parties not being thirty
yards apart at any time.

It is not clear from the testimony who commenced the fight,
or whether at that time Davis had the plank. There was tes-
timony on the part of the State that Davis threw down the
plank before the difficulty commenced, saying to Eiland that

[Eiland v. State.]

he, Davis, was unarmed and would not go into Eiland's store, but that if Eiland came out he would whip him. About this time the parties engaged in a struggle, and rolled over on the ground. Davis cried out that he was cut, at the same time saying, " Bunk, what do you mean? Do you mean to kill me?" Eiland replied, " Yes, d——n you, I intend to kill you." On examining Davis it was found that he had received several cuts, one of which proved fatal a few minutes afterwards. The cutting was done with a spring-back knife, the blade of which was four or five inches long. It had been kept by Eiland in his store to open sardine boxes and for other like purposes, and was picked up by him as he came out.

The State introduced two witnesses who testified that they went to Eiland's house on the night of the difficulty. As they went in Eiland said : " Here I am, arrest me if you like." Prisoner also told them that " Davis was rearing around wanting a fuss, and ran up and caught hold of me and jerked me off my steps. I knocked him down with my fist. Davis rose and came at me again. I knew I was unable to cope with him, and I cut him five or six times, and tried my damndest to kill him."

The foregoing is all of the testimony of the numerous witnesses examined, which is necessary to a proper understanding of the case.

The court gave a general charge to the jury upon the whole law of the case. In it was embodied this paragraph : " To justify the taking of life there must be an imperious necessity existing to prevent the commission of a felony, or great bodily harm, or such appearance of necessity as would impress the mind of a reasonable, prudent man that it actually existed. And if you believe from the evidence, beyond a reasonable doubt, that the defendant Eiland took the life of Davis, the deceased, without the existence, or apparent existence, at the time of the killing, of this imperious necessity, he is not guiltless. This necessity cannot be said to have existed if the defendant could have avoided the combat without danger to his life or limb ; or if the defendant voluntarily brought on the combat. A man cannot create a necessity and then claim the benefit of it."

The bill of exceptions recites that " to the charge of the court, given mero motu, the defendant excepted, and especially to so much of it as instructs the jury that ' the necessity which would authorize a man to take the life of his assailant must be imperious.' "

The defendant requested ten written charges, seven of which the court gave in the terms in which they were asked. The eighth charge requested, as copied in the transcript, is as fol-

lows : " That though the jury may infer malice from the use of a deadly weapon, yet they are not bound to infer malice from the use of any particular weapon ; but that the use of a deadly weapon is a circumstance that they may look to, in connection with all the circumstances, in determining the existence or non-existence of malice." The court refused to give this charge, and the defendant duly excepted. The ninth charge requested by defendant was as follows : " If the confessions of the defendant introduced by the State showed that the defendant acted under apprehension of danger, then the jury must acquit the defendant unless the truth of such confessions is clearly disproved." To the refusal to give this charge the defendant duly excepted. The tenth charge requested by the defendant was as follows : " In this State a person is not bound to retreat from his assailant when attacked, if by so retreating he increases the threatened danger to his person or his own life ; that the law, when it requires an assailed person to decline the combat, means that he must do so unless so retreating will endanger his own person or life ; " which charge the court gave, " with the following qualification *mero motu*, ' but the necessity that would authorize a man to slay his assailant must be, or appear to the slayer to be, an imperious necessity,' to which qualication of said charge by the court the prisoner excepted."

The court, at the request of the solicitor, gave the following charges in writing, to the giving of each of which the defendant duly excepted : 1. " If the necessity for the killing is produced by defendant's attacking the dead man, then such necessity does not justify or excuse the killing." 2. " If the defendant kills another, and could avoid that killing, without danger to himself, by retreating, then he is not excused or justified, but is guilty." 3. " If there are no acts or demonstrations or threats at the time of the killing, then no matter if his characacter is violent or turbulent, the killing is not justified or excused ; and a mere threat of deceased, ' Come to me and I will whip you,' is not such a threat as can invoke a violent or turbulent character for its illustration."

The various charges to which exception was reserved are now urged as errors fatal to the judgment and conviction.

WILLIAM H. BARNES for appellant. — 1. The eighth charge requested should have been given. It merely asserted the law to be that the *jury* was to draw the inference of malice, and that it did not necessarily follow, because a deadly weapon was used, that the killing was malicious, when there was other evidence in the case. 45 Ala. 82 ; 47 Ala. 570 ; 15 Ala. 749 ; *Ogletree* v. *The State*, 28 Ala. The qualification of the charge

[Eiland v. State.]

given was erroneous. *Edgar* v. *The State*, 43 Ala. 52. All the charges given at the request of the solicitor should have been refused; they were calculated to confuse and mislead the jury. The last charge given, at the request of the solicitor, was particularly objectionable. Its effect was to prevent consideration of the bad character of the deceased, and effectually withdrew that question from the jury.

JOHN W. A. SANFORD, Attorney General, *contra.* — The eighth charge asked was properly refused. 37 Ala. 142; *Hill* v. *State*, 43 Ala. 338; Starkie's Evidence (Sharswood's edition), 698. The charge is involved. It required the jury to find additional circumstances to the use of the knife before they could draw the inference of malice. The confessions may be true in part, or false in part. There is no law requiring equal credence to every part; and a jury may disbelieve any part, although uncontradicted by direct testimony, if it seems incredible. 48 Ala. 266; 31 Ala. 329. There was no error in the qualification of the charge. *Turbeville* v. *The State*, 40 Ala. 715. The third charge given at the request of the solicitor, even if erroneous, was not prejudicial to defendant; there was no evidence under which the jury could lawfully give any weight to the bad character of deceased.

BRICKELL, C. J. — A general charge was given the jury, lucid and accurate in its definition of the various degrees of criminal homicide, of the facts which must concur to constitute the one or the other, and the strength of evidence which would authorize a conviction. In this charge is embodied this paragraph: " To justify the taking of life there must be an imperious necessity existing to prevent the commission of a felony, or great bodily harm, or such appearance of necessity as would impress the mind of a reasonable, prudent man that it actually existed. And if you believe from the evidence, beyond reasonable doubt, that the defendant Eiland took the life of Davis, the deceased, without the existence, or apparent existence, at the time of the killing, of this imperious necessity, he is not guiltless. This necessity cannot be said to have existed if the defendant could have avoided the combat without danger to his life or limb; or if the defendant voluntarily brought on the combat. A man cannot create a necessity and then claim the benefit of it." An exception was reserved to so much of this charge as asserts, " that the necessity which would authorize a man to take the life of his assailant must be imperious." Among other charges requested by the defendant was the following: " That in this State a person is not bound to retreat from his assailant when attacked, if by so

[Eiland *v.* State.]

retreating he increases the threatened danger to his person or his own life ; that the law, when it requires an assailed person to decline the combat, means that he must do so unless so retreating will endanger his own person or life." This charge the court gave, but with the qualification, that " the necessity which authorizes a man to slay his assailant must be, or appear to the slayer to be, an imperious necessity." To this qualification an exception was reserved. At the request of the solicitor, the court gave the following instructions : " That if the necessity of killing is produced by the defendant attacking the dead man, then such necessity does not justify or excuse the killing. If the defendant kills another, and could avoid that killing, without danger to himself, by retreating, then he is not excused or justified but, is guilty." An exception was reserved to these instructions.

Confining our inquiries as to the general charge of the court to the matter of the exception, we cannot declare it erroneous. Necessity only, real or appearing to be real, can justify the taking of human life. In the leading case of *Oliver* v. *State* (17 Ala. 587), it is said, the law will justify the taking of life when it is done from necessity, to prevent the commission of a felony, or to preserve one's own life or his person from great bodily harm." Again : " To justify the taking of life there must be an *imperious* necessity to prevent the commission of a felony, or great bodily harm. Without this necessity, the law, although under some circumstances it will mitigate the crime to manslaughter, cannot hold the party slaying altogether justified." Subsequent decisions, varying but little in language, affirm the same principle. *Holmes* v. *State*, 24 Ala. 67 ; *Noles* v. *State*, 26 Ala. 31 ; *Hughey* v. *State*, 47 Ala. 97. If it was apprehended that the charge, under the particular facts of, the case, had a tendency to mislead the jury, to impress them with the conviction that there must be something more than an apparent pressing necessity, that the defendant should take the life of the deceased to save himself from great bodily harm, an explanatory charge should have been requested. It is not the practice of this court to reverse, in civil or criminal cases, because a charge given by the court has a tendency to mislead. Such must be its inevitable effect, or the party complaining to procure a reversal must have asked a charge obviating the misleading tendency. 1 Brick. Dig. 344, § 129.

It is insisted the court erred in the qualification attached to the charge given, at the request of the defendant. In the view we have expressed, the qualification is not erroneous in point of law ; but that being conceded, the power of the court to add any qualification to a charge in writing, given on request of either party, is denied ; and in support of the propo-

[Eiland v. State.]

sition, we are referred to *Edgar* v. *State*, 43 Ala. 45. The statute is : " Charges moved for by either party must be in writing, and must be given or refused in the terms in which they are written ; and it is the duty of the judge to write 'given,' or 'refused,' as the case may be, on the document, and sign his name thereto, which thereby becomes a part of the record, and may be taken by the jury with them on their retirement." R. C. § 2756. Prior to the Code, for many years, it was the course of decision in this court that a party was entitled to a charge requested, in the language in which it was expressed, if it asserted a correct legal proposition applicable to the facts of the case ; and if refused, the error of refusal was not cured because a charge had already been, or was subsequently given of equivalent import. *Rives* v. *McLoskey*, 5 Stew. & Port. 330 ; *Maynard* v. *Johnson*, 4 Ala. 116 ; *Ivey* v. *Phifer*, 11 Ala. 535 ; *Clealand* v. *Walker*, Ib. 1059 ; *Hinton* v. *Nelms*, 13 Ala. 222 ; *Cole* v. *Spann*, Ib. 537 ; *Philips* v. *Beene*, 16 Ala. 720. It was not supposed while this was the rule of practice that the court was deprived of the power, or relieved from the duty of giving other and further explanatory charges, if proper, to prevent the jury from being misled, or to enable them intelligently to apply the law to the evidence. In *Long* v. *Rodgers* (19 Ala. 321) the rule of practice was changed, and the decisions to which we have referred were overruled, a majority of the court holding (CHILTON, J., dissenting), that a judgment would not be reversed because of the refusal of a charge in the language in which it was requested, the charge given being a full and fair exposition of the law. Such remained the law of this court until the adoption of the Code of 1852, containing the statutory provision to which we have referred. *Ewing* v. *Sanford*, 21 Ala. 157. Soon after the adoption of the Code, the construction of this section was presented to this court. Charges were given as requested, but the court added an explanation supposed to be necessary to prevent them from misleading the jury. CHILTON, C. J., speaking for the court, said the statute was complied with ; that it " was not designed to deprive the court of the right to give explanatory charges after giving the charge as prayed for. Indeed, it is the duty of the court to see to it that the jury are not misled by any charge which is given, but so to simplify and explain the charges which are given, by additional instructions, as to prevent misunderstanding or a misapplication of them." *Morris* v. *State*, 25 Ala. 57. In *Dupree* v. *State* (33 Ala. 380), it was held that it was not error for the court to qualify a charge requested, which without qualification might have misled the jury. In *Bell's Adm'r* v. *Troy* (35 Ala. 185), it was said : " If a charge requested is free from involvement or ten-

dency to mislead, and asserts a correct legal proposition, it is the duty of the court to give it as asked; and if the presiding judge is apprehensive that it places any particular phase of the case in undue prominence before the jury, it is his privilege, if not his duty, to give an additional explanatory charge." In *Scott* v. *State* (37 Ala. 117), the court having charged the jury orally, at the request of the defendant gave several charges in writing, and added, " that the jury would receive the written charge, in connection with the charges and law as given and expounded orally from the bench, as the law of the case," and the addition was held proper. In *Turbeville* v. *State* (40 Ala. 715), the court, at the request of the defendant, charged the jury, " that they must find the defendant not guilty, unless the evidence against him is such as to exclude to a moral certainty every supposition but that of his guilt," but added, the charge only meant that the jury must be satisfied, beyond a reasonable doubt, of the guilt of the defendant. The addition was held an *explanation,* not a *qualification* of the charge, and correct. In *Edgar* v. *State, supra,* the charges given asserted incorrect legal propositions, and, as the chief justice declared, should have been refused altogether; but having been given as requested, the power of the court to add to them any qualification was denied, and because of the qualifications the judgment was reversed. We regard the statute as introductive and affirmatory of the original rule of practice, which was announced and observed in this court, and intended to secure to the parties the unqualified right to charges requested when they affirm correct legal propositions, not abstract, and not misleading, in the terms in which they are expressed. The right is valuable, for whatever may be the learning and ability of the presiding judge of the court, counsel who have patiently and diligently examined the facts and law of a case are often better prepared to frame an instruction that will clearly express and directly impress the jury with a distinct and definite idea of the legal proposition on which reliance for a favorable verdict is placed. However this may be, it is but just to afford them the opportunity of presenting such propositions, in the terms which they believe most apt to give them effect. This right the statute secures, and it cannot be diminished by the giving of a charge as it is requested, and then so limiting, restricting, or modifying it by qualification, as to diminish the force to which it may be entitled as a legal proposition. If the court had such power, it would be idle to say the charge was given in the terms in which it was written. The right and duty of the court is not to qualify, or limit, or modify, or restrict the charge. If it needs qualification, or restriction, or modification, to make it a correct legal proposition, as applicable to the evidence, the duty

of the court is to refuse it. The power and duty of the court is to *explain*, not to *qualify*, and is very clearly expressed in the case of *Bell's Adm'r* v. *Troy*, *supra*, and in *Morris* v. *State*, *supra*. The terms *qualification* and *explanation*, as applied to charges requested and charges given, are sometimes used in our decisions as of equivalent meaning, and because of this loose use of words there seems to be a conflict of decision. The conflict is however seeming, not real. We are not aware of any case, since the statute, which has sanctioned the power of the court to qualify a charge given on request, nor of any which denies the power to explain, when the charge, though asserting a correct proposition, is inapt, or involved in expression, or has a tendency to mislead, unless explained. The correctness of the charge requested by the appellant was conceded by the court when it was given. The qualification which was added correctly states the law, and had been in the same terms affirmed in the general charge. It is not in explanation of the charge requested. It does not interpret or make more intelligible any expression employed in the charge given, nor does it relieve that charge from any obscurity or involvement attributable to it. The charge requested, and given, refers to the duty of him who is assailed to retreat, rather than to repel the assault by violence endangering the life of his assailant. The qualification refers to the character of the necessity, justifying the taking of human life. However correct it may be, as a legal proposition, without invading the right secured by the statute, it could not be added to the charge given. It is a modification or limitation of that charge ; and when it is remembered the impression which every word falling from the judge makes on the minds of the jury, it would be hazardous to say no injury resulted from the change. The charge goes to the jury not explained, but modified and restricted in its application, so that it would bear to their minds the impress of illegality in some respects.

The charge could have been properly refused. It has an immediate tendency to mislead the jury; and if given without explanation, would probably have induced them to believe that any peril to the person, though it was of a mere indignity, or of a mere battery, from which great bodily harm could not have been reasonably apprehended, would justify the taking of life, if it could not be escaped by retreat, or if retreat would increase the peril of it. Life cannot be taken to avert any other than a felonious assault, or an attempt to commit a forcible felony. If an assault is not felonious, however it may mitigate, it cannot justify a homicide. If a felonious assault is so violent that the assailed cannot retreat from it without manifest danger to his life, or of enormous bodily harm, the duty of retreat does not

rest on him. Or if, under the particular facts of a case, the peril of life, or of great bodily harm, would be increased rather than lessened by retreat, he may stand and resist his assailant to his death. While we hold the charge could have been properly refused, and that the court could properly have explained it, we are constrained in obedience to the statute, and the authorities to which we have referred, to hold its qualification without the power of the court, and erroneous.

The first charge given on request of the solicitor seems to us to assert only the recognized general principle that a person who has slain another cannot urge, in justification of the killing, a necessity produced by his own unlawful or wrongful act. Cases on Self Def. 220.

The second charge given on request of the solicitor, when applied to the evidence, we hold, asserts a correct proposition. In *Pierson* v. *State* (12 Ala. 149), it is held, and as we think correctly, that the common law of this State on the subject of homicide is derived from, and the same as the common law of England ; and when that law requires the person assailed to decline the combat, or to retreat before he will be excused in taking the life of his adversary, our law requires the same. There may be cases of murderous assault, or of assaults with intent to commit other atrocious felonies, from which it is not the duty of him who is assailed to retreat. When, however, the assault is made on sudden quarrel, and a mutual combat ensues, retreat, if possible to avoid the threatened danger, is a duty. For as is said in *Commonwealth* v. *Drum* (58 Penn. 1), " when it comes to a question whether one man shall flee or another shall live, the law decides that the former shall flee rather than that the latter shall die."

The eighth charge requested by the defendant is rather involved and confused. On the argument we were inclined to the opinion its refusal was erroneous. A more careful examination leaves us in doubt as to its true meaning. The law is that when life is taken with a deadly weapon malice is presumed, for the inference is that the natural or probable effect of any act deliberately done is intended by its actor. Whart. Am. Crim. Law, § 944. It is the peculiar province of the jury, however, to draw the presumptions or inferences from the facts in evidence. When the circumstances attending the killing are shown, no one fact should be singled out and disconnected from the other evidence, and malice, or any other necessary fact inferred or presumed from it. Whether from all the facts malice is fairly to be presumed, the jury should determine. In *Murphy* v. *State* (37 Ala. 142), the circuit court had instructed the jury that when a killing has been proved, the law presumes malice, unless the evidence which proves the killing repels the

[Eiland v. State.]

presumption.   The charge was held free from error, when con-
strued in reference to the fact that the killing was perpetrated
with a deadly weapon. In *Hampton* v. *State* (45 Ala. 82), the
court charged the jury, if they believed the killing was done
with a gun they must infer malice.   The charge was held er-
roneous, as an invasion of the province of the jury, and because
it placed the guilt or innocence of the defendant upon the char-
acter of the instrument used, wholly excluding the considera-
tion of the other facts in evidence tending to show the homi-
cide was excusable.   A similar charge on the same reasoning
was declared erroneous in *Martin* v. *State*, 47 Ala. 564.   We
were inclined to regard this charge as asserting simply that a
deliberate killing, with a deadly weapon, is presumed to be
malicious ; but if the facts and circumstances attending the
killing are in evidence, the presumption must be drawn from
the whole evidence, and not from the nature of the weapon
only.   If this is the proposition intended to be expressed, the
charge was correct.   But as for the error we have already
pointed out a reversal follows, we pass over this charge, re-
marking only that care should be taken to frame with distinct-
ness and clearness instructions to be given the jury.

On the trial evidence was given tending to show the bad
character of the deceased for turbulence, violence, and revenge-
fulness.   In view of this evidence, the court, at the request of
the solicitor, charged the jury : " If there are no acts or demon-
strations, or threats at the time of the killing, then no matter
if his character is violent or turbulent, the killing is not justi-
fied or excused ; and a mere threat of the deceased, ' Come to
me, and I will whip you,' is not such a threat as can invoke a
violent or turbulent character for its illustration."   The prin-
ciple to be deduced from our decisions is, that the bad charac-
ter of the deceased, of itself, cannot lessen the criminality of
his killing.   As a mere abstract proposition, or isolated fact,
it should have no influence in determining the guilt of the ac-
cused.   Whatever may be his character for violence, turbu-
lence, recklessness, and vindictiveness, the man is under the
protection of the law, and it is as great a crime to take his life
as it is the life of the most quiet, orderly, and law-abiding citi-
zen.   But evidence of his bad character for turbulence, vio-
lence, recklessness, desperation, and revengefulness should be
received when it *illustrates*, or tends to *illustrate* the circum-
stances attending the homicide ; when it qualifies, explains,
and gives meaning and point to the threats or conduct of the
deceased at the time of the killing.   The rule must not be
understood to excuse the taking of life because the character
of the man is bad.   Nor, on the other hand, must it be limited
to cases in which the degree of homicide is doubtful ; or in

which it is doubtful whether the killing was in self-defence, or under circumstances which acquit the slayer of guilt.  A reasonable doubt as to the degree of the criminality of the homicide would require that the accused should be found guilty of the least degree the evidence would establish.  Therefore, when provocation has been given, it may be permissible to look to the character of the deceased in determining its character.  Or, if there is a doubt whether the homicide is attended with circumstances excusing or justifying it, an acquittal is demanded by law.  Limiting the evidence, therefore, to cases in which there is doubt is a practical denial to it of all influence.  *Felix* v. *State*, 18 Ala. 720  The conduct of the deceased at the time of the killing may have been apparently innocent, or the threats then made by him apparently harmless ; yet, when illustrated by his character, may have excited in the mind of the accused a reasonable belief of his imminent peril, and may satisfy the jury that they imported such peril, and justified the accused in the force he used to avoid the peril.  *Quesenberry* v. *State*, 3 Stew. & Port. 308 ; *Pritchett* v. *State*, 22 Ala. 39 ; *Franklin* v. *State*, 29 Ala. 14.  On the court, in every case, rests the responsibility of determining the admissibility of the evidence of the character of the deceased.  It should never be received, when at the time of the killing there is no act or word of the deceased which can be illustrated or explained by it ; or when there is not evidence conducing to show the killing was in self-defence.  When admitted, its weight and effect belongs to the jury under proper instructions from the court.  The first branch of the charge we are considering may be a correct statement of the law.  The latter branch seems to us manifestly incorrect.  The evidence is received to illustrate, to explain, to give force to the words or conduct of the deceased at the time of the killing — to enable the jury to arrive at the true condition of the parties then, and the motives which it may reasonably be supposed influenced them.  The conduct may have been apparently innocent, or the threats harmless ; or the threats may have been of slight injury, or even conditional, in their ordinary significance; yet, it is for the jury to say in the light of his character what these threats or this conduct really imported, or what impression they could reasonably have made on the mind of the accused.  When the court singles out a particular act of the deceased, really or seemingly innocent, or a particular threat or expression, and declares to the jury such act or threat cannot be illustrated by this bad character, the province of the jury is invaded.  In giving this charge the court erred.

Confessions and declarations made by the defendant in reference to the killing, and its attendant circumstances, were

VOL. LII.

introduced in evidence by the State. The defendant requested the court to charge the jury, " that if the confessions, of the defendant introduced by the State show that the defendant acted under apprehension of danger, they must acquit, unless the truth of such confessions is clearly disproved." This charge was refused, and properly. The danger apprehended may not have been of that character to avert which the law excuses the taking of life. Any danger whether of life or limb, or of a lesser injury, may have been apprehended, and would, if the charge had been given, have authorized an acquittal. The apprehension may not have been reasonable — it may have been the result of an unreasoning fear, or passion, and yet would have excused the defendant, under the charge. But if the charge was not objectionable in these respects, if it had clearly expressed, and distinctly defined the danger, and the kind of apprehension which would have required an acquittal, it could not be sanctioned. Confessions or declarations, whether offered in evidence in a civil or criminal case, must be received as a whole. The part which criminates must be taken connected with that which exculpates. The law does not ascertain the credence which shall be attached to either part, or to the confession or declaration in its entirety. The jury are not bound to attach equal credence to every part; they may, for sufficient reasons, reject a part and give effect to a part; such rejection cannot be capriciously made, nor can credence be capriciously given to a part. That which is favorable to the party should not be rejected merely because it is favorable to him, and because of the motives which may have induced him to make it. The confession should be taken as a whole; the time and circumstances of its making, — its harmony or inconsistency with other evidence, and the motives which may have operated on the party in making it, — should all be fairly considered by the jury. Then, without regard to whether they are clearly disproved or not, the jury should credit all which they find sufficient reason for crediting, and reject all which they find sufficient reason for rejecting. In *Corbett* v. *State* (31 Ala. 329), the true principle is stated. Declarations of the prisoner had been introduced by the State, and he requested the court to charge the jury, that they must be taken together as a whole, " and, if there was no other evidence in the case incompatible with it, the declaration so adduced in evidence must be taken as true." This court said : " We do not deny the doctrine, that when a confession is given in evidence against a defendant, it is his right to have the whole conversation laid before the jury, and considered by them. It does not follow, however, that if there be either no other evidence in the case, or no other evidence incompatible

with it, the declaration so adduced in evidence must be taken as true. The declaration or confession may be incompatible with itself, or may be so unreasonable as to tax credulity too far. We hold that the defendant has all his rights, in this connection, when the entire conversation is laid before the jury, and they are instructed to give a fair and unprejudicial consideration. Of course that body will not, and should not without reason, believe that portion which makes against the prisoner, and reject all which favors his innocence."

For the errors we have noticed, the judgment must be reversed, and the cause remanded. The prisoner will remain in custody until discharged by due course of law.